Mike REEL, Appellant,

v.

ARKANSAS DEPARTMENT OF CORRECTION, Jim Mabry, Individually and as director of the Arkansas Department of Correction; R. G. Britton, Individually and as Assistant Director of Administrative Services, Arkansas Department of Correction; Marshall N. Rush, Individually and as Chairman, Arkansas Board of Correction; Eula Dorsey, Individually and as Vice-Chairman, Arkansas Board of Correction; Thomas H. Wortham, M.D., Individually and as Secretary, Arkansas Board of Correction; Richard E. Griffin, Individually and as a Member of the Arkansas Board of Correction; and John Elrod, Individually and as a Member of the Arkansas Board of Correction, Appellees.

No. 81–1317.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1981.

Decided March 17, 1982.

Rodney E. Slater, Asst. Atty. Gen., Litigation Division, Little Rock, Ark., for appellees.

Wm. R. Wilson, Jr., Little Rock, Ark., for appellant.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* District Judge.

McMILLIAN, Circuit Judge.

Mike Reel appeals from the district court's decision to dismiss part of his complaint in an action brought under 42 U.S.C. § 1983. For reversal Reel argues that the district court erred in (1) finding that Reel's release of information to a member of a state investigative commission was not a motivating factor in the decision to fire him, (2) applying the law to the facts sur-

---

rounding Reel's termination, (3) failing to rule that Reel's release of information to the commissioner was constitutionally protected speech, (4) failing to find that the Arkansas Department of Correction's chain-of-command policy is unconstitutional on its face and as applied, (5) denying Reel's request for declaratory and injunctive relief and monetary damages, and (6) denying Reel's motion for attorney's fees as to issues upon which he prevailed at trial. For the reasons discussed below, we reverse in part and remand for further proceedings.[1]

Reel was employed as a "Special Project Supervisor" by the Arkansas Department of Correction (ADC) between October 1, 1975, and May 11, 1977. His particular responsibility was bookkeeping; before March 1977, he analyzed federal grants for the ADC.

Because of various problems the ADC had experienced, the Arkansas legislature passed a resolution establishing the Arkansas Prison Study Commission (Commission). The functions of the Commission involved investigating the financial affairs of the ADC, including the use and management of federal grants. A member of the Commission, Sherman Banks, requested information from Reel which concerned ADC federal grants. Reel gave Banks copies of certain documents relating to the requested information[2] without prior approval from his superiors.

At a meeting the Commission held on May 11, 1977, Banks released a memorandum which was based in part upon the information Reel had given him. Members of the press and a legal representative of the ADC were in attendance at this meeting; they received copies of the memorandum, which cast doubt on the quality of the ADC's fiscal management.

In effect at the time Reel gave Banks the information were certain rules issued by the ADC which set out the proper procedure for disseminating departmental information.[3] The rules, with which Reel was familiar, generally prohibited the release of departmental information to the public without a supervisor's prior approval.

At approximately 3:45 p. m. on the same day the Commissioner released his memorandum, Reel was summoned to the office of then ADC Director Jim Mabry. There Reel met with Mabry and then ADC Assistant Director of Administrative Services R. G. Britton, defendants below. Mabry and Britton confronted Reel concerning the information he had given to the Commissioner. They asked if Reel knew what ADC regulations stated regarding the release of departmental information; he responded that he did know. Reel also informed Mabry and Britton that he disagreed with the regulation and with the ADC's chain-of-command policy.[4] Mabry then remarked that perhaps Reel should seek employment

---

1. No question regarding the assault and false imprisonment charges was raised on appeal.

2. The information contained in the documents was a matter of public record.

3. *Chain of Command*
The recognition of authority is a most necessary ingredient in the makeup of an efficient correctional program. When an employee is placed on an assignment, he should know who his supervisor is so that all questions regarding the performance of a job may be directed to that supervisor unless an emergency arises. The chain of command is mandatory, and strict adherence to the procedures and regulations implied or expressed in it is a responsibility of each employee and supervisor.
13. The chain of command should be observed by all employees. When line of com-

mand is crossed, it should be done only in emergencies or when the appropriate supervisor is unavailable to the employees. The adherence to the chain of command will make the entire operation much smoother and more effective. All ranking supervisors have the responsibility to make on the spot correction, if there is imminent danger to life and property.
*Part 4, subsection 7:*
Most information in State government is public record and is available to all citizens. However, many confidential matters are entrusted in those working for the State. You should be certain (check with your supervisor) that information requested may be made available to the inquiring public.

4. *See* note 3 *supra.*

elsewhere if he was so dissatisfied with ADC procedures.[5]

Reel remained in Mabry's office for approximately thirty to forty minutes after Mabry made this statement. At approximately 4:45 p. m., Mabry asked Reel to wait in Mabry's outer office while he made a telephone call. Mabry attempted to call Charles Ward, the chairman of the Commission, but had difficulty in locating him. Reel waited in the outer office for approximately twenty-five minutes while Mabry tried to find Ward. Mabry finally contacted Ward, but Reel informed Mabry that unless Mabry wanted to talk at that moment, Reel intended to leave the office rather than wait any longer because it was after 5:00 p. m. Mabry directed Britton to tell Reel to stay because Mabry had more questions to ask Reel; however, Mabry did not tell Britton to use force to keep Reel from leaving. Reel attempted to leave the outer office but Britton grabbed him by the arm and spun him around. Reel then telephoned his wife to tell her what was occurring. She advised him to leave, which he again tried to do. At this point Britton blocked Reel's path out of the office and used a "football shoulder" to detain him for approximately thirty seconds. Britton told Reel that Reel would be fired if he did not stay; Reel left after getting away from Britton. Afterwards Britton told Mabry that he had fired Reel for insubordination because Reel had left against Britton's orders.

Reel brought a claim against Britton and Mabry and other Arkansas correction officials under 42 U.S.C. § 1983 alleging that they had deprived him of his constitutional rights to freedom of speech and due process of law, and his right to be free from physical abuse and restraint. The complaint also charged Britton with assault and false imprisonment. The district court found Britton guilty of the charges of assault and false imprisonment and awarded Reel $100 in damages; all other matters in the case were dismissed with prejudice and each party directed to bear its own costs and attorney's fees.[6]

For reversal Reel argues that the district court erred in finding that Reel's release of the document copies to Commissioner Banks was not a motivating factor in the decision to fire Reel, and in not finding that Reel's release of the information was constitutionally protected speech. Reel also argues that in the process of committing these errors, the district court misapplied the law to the facts.

■ We remand this case for the district court's further consideration in light of the Supreme Court's decision in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and our decision in *Atcherson v. Siebenmann*, 605 F.2d 1058 (8th Cir. 1979). As was held in *Mt. Healthy*, in wrongful discharge cases the plaintiff has the initial burden of showing that his conduct is constitutionally protected and that this protected conduct was a substantial or motivating factor in the decision to fire him. 429 U.S. at 287, 97 S.Ct. at 576. If the plaintiff meets this burden, the defendant must demonstrate by a preponderance of the evidence that the decision to fire the plaintiff would have been made even had the protected conduct not occurred. *Id.*

■ We remand the case for further findings as to these issues and as to the issue of the constitutionality of the chain-of-command policy. In *Atcherson* we stated the rule that when determining whether a public employee's speech warrants the protection of the first amendment, the governmental employer's interest in the efficient administration of public services must be weighed against the employee's interest in commenting upon a particular issue. 605 F.2d 1063. This rule was enunciated in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), and is the standard applicable to decide whether the Arkansas Department

---

5. Mabry contended and the district court found that this remark did not indicate an intention to fire Reel.

6. No. LR–C–77–144 (E.D.Ark. Feb. 4, 1981).

of Correction chain-of-command policy can withstand constitutional scrutiny.

Reel also argues that he is entitled to attorney's fees and costs as a prevailing party within the meaning of the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C. § 1988.[7] The district court held that Reel was not entitled to attorney's fees because there was no statutory authority for the award, because Reel had succeeded only on tort claims rather than constitutional claims, because there was no contractual arrangement between the parties to that effect, and because the "interests of justice" did not require the award.

■ The district court was correct in denying Reel recovery for attorney's fees. Attorney's fees can be awarded to a prevailing party when a suit is brought under 42 U.S.C. § 1983, as is the case here. Courts generally have some discretion for purposes of deciding whether to award a prevailing party attorney's fees. Before attorney's fees can be awarded to Reel, a determination that he is a prevailing party within the meaning of § 1988 must be made.

■ A plaintiff qualifies as a prevailing party once he has been successful on a single substantial claim brought in the context of a civil rights suit; success on all claims made is not required. *Busche v. Burkee*, 649 F.2d 509, 521 (7th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Oldham v. Ehrlich*, 617 F.2d 163, 168 n.9 (8th Cir. 1980). It is sufficient if a significant issue is determined in the plaintiff's favor and leads to the achievement of some of the benefits sought by bringing suit. *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979); *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). When a plaintiff essentially succeeds in obtaining the sought-after relief in his claims

on the merits, that plaintiff is a prevailing party. *Morrison v. Ayoob*, 627 F.2d 669 (3d Cir. 1980) (per curiam), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); *Swietlowich v. County of Bucks*, 620 F.2d 33 (3d Cir. 1980) (per curiam).

■ A court may also look to the "substance of the litigation's outcome" to determine if a plaintiff substantially prevailed. *Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). A plaintiff has substantially prevailed if significant results are achieved by initiating suit. *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (goals achieved through consent decree).

■ Reel was successful below only with regard to his claims of assault and false imprisonment against Britton. His limited success in the district court does not make him a prevailing party under § 1988. The assault and false imprisonment claims are not as "substantial" as have been successful claims providing a basis for an award of attorney's fees. *Compare* cases cited above *and Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1980) (inmates prevailed on their claims for improved prison conditions); *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978) (challenge to state law disallowing welfare payments); *Seals v. Quarterly County Court*, 562 F.2d 390 (6th Cir. 1977) (claim under state law which mandated reapportionment). Reel also failed to achieve essential success or significant results—he prevailed on relatively minor claims.

■ Courts have found that a person was a prevailing party in some instances in which the person was successful on a pendent nonconstitutional claim brought with a substantial constitutional claim. In order for recovery of attorney's fees to be permitted, the two claims must arise from the same nucleus of operative fact. *Kimbrough*

---

7. 42 U.S.C. § 1988 provides in part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

This statute was amended by the Equal Access to Justice Act, 5 U.S.C.A. § 504 (West Supp. 1981).

*v. Arkansas Activities Ass'n*, 574 F.2d 423 (8th Cir. 1978); *Lund v. Affleck, supra*, 587 F.2d 75; *Seals v. Quarterly County Court, supra*, 562 F.2d 390. These guidelines are derived from language in the House report accompanying 42 U.S.C. § 1988:

> To the extent a plaintiff joins a claim under one of the statutes enumerated in [§ 1988] with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir. 1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra; United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra* at 725, 86 S.Ct. 1130 [at 1138].

H.R.Rep.No. 94–1558, 94th Cong., 2d Sess. 4 n.7 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908.

Reel has no doubt satisfied the requirement that the constitutional claim be substantial, *see Hagans v. Lavine, supra*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577, and the requirement that his constitutional claim and his pendent claim arise out of a common nucleus of operative fact. Reel is nevertheless not a prevailing party because his case is not of the type contemplated in the House report. Here the district court did not avoid reaching the constitutional issue because the pendent claim was dispositive; it found that Reel had no constitutional claim at all.[8]

In addition, Reel's claims of assault and battery are not the type of pendent claims for which courts have awarded attorney's fees in the past under § 1983. In *Kimbrough v. Arkansas Activities Ass'n, supra*, 574 F.2d 423, a high school student challenged a ruling making him ineligible for interscholastic athletic competition. The case was disposed of on the nonconstitutional ground that the applicable rule was ambiguous. In *Holley v. Lavine*, 605 F.2d 638 (2d Cir. 1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), the disallowance of welfare payments to aliens illegally residing in the United States gave rise to a successful pendent claim under the Social Security Act. *Tongol v. Usery*, 601 F.2d 1091 (9th Cir. 1979), involved the states' recoupment of overpayments in federal supplemental unemployment benefits, which provided a basis for a pendent claim under the Emergency Unemployment Compensation Act of 1974. In *Seals v. Quarterly County Court, supra*, 562 F.2d 390, plaintiffs sought reapportionment of voting districts alleging a violation of a state statute which mandated reapportionment.

Attorney's fees were disallowed in *Haywood v. Ball*, 634 F.2d 740 (4th Cir. 1980), in which a plaintiff brought a § 1983 claim and a pendent common law negligence claim against a jailer after the plaintiff failed to receive prompt medical attention. The plaintiff had suffered injuries in an accident after which he was arrested on the charge of driving while intoxicated. The jury there found that there was no violation of the plaintiff's constitutional rights, but found the jailer guilty on the negligence claim. The appellate court affirmed the district court's denial of attorney's fees reasoning that they were not justified where the plaintiff had lost on his constitutional claim after a plenary trial. And at least one court has suggested that recovery on pendent claims of assault and battery, without more, is an insufficient basis for making an award of attorney's fees under § 1988. *Williams v. Thomas*, 511 F.Supp. 535, 544

---

**8.** Reel's case is also different in that we have remanded it to the district court for consideration of the constitutional issues.

(N.D.Tex.1981). In light of this decision and the others previously discussed, it would appear that awarding Reel attorney's fees would be inappropriate at this point in the proceedings.

We also deny Reel attorney's fees for this appeal under the rationale set out in the Supreme Court's decision in *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam). It is within the court's power to award attorney's fees to a party who has prevailed on an appeal arising out of § 1983 litigation. *Vasquez v. Fleming*, 617 F.2d 334 (3d Cir. 1980); *Green v. Ten Eyck*, 572 F.2d 1233, 1243 (8th Cir. 1978). Reel, however, has not prevailed on appeal to the extent necessary under *Hanrahan*. To be awarded attorney's fees for a successful appeal, a party must have established substantial rights on appeal, based on the merits of that party's claims. 446 U.S. at 757–58, 100 S.Ct. at 1989–90. Reel has merely had his case remanded to the district court for a determination of his rights; the appeal has not established them.

The decision of the district court is hereby reversed in part and remanded for further proceedings consistent with this opinion.