Hervey JACKSON

v.

**INHABITANTS OF the TOWN OF SEARSPORT et al.***

Supreme Judicial Court of Maine.

Argued Nov. 16, 1982.

Decided Feb. 18, 1983.

Kathleen C. Caldwell (orally), Pine Tree Legal Assistance, Inc., Bangor, Sunenblick, Fontaine & Reben, Harold L. Lichten, Portland, for plaintiff.

Peter K. Mason (orally), Searsport, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

NICHOLS, Justice.

In a day when dockets, state and federal, abound with litigation invoking 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act,[1] this appeal presents the narrow question of whether it was appropriate for the Superior Court to deny such an award where a person had to resort to court

---

* Again we point out that in naming a town as a party defendant, the corporate name is the "inhabitants of" that town. *Inhabitants of the Town of Boothbay Harbor v. Russell*, 410 A.2d 554, 557 n. 3 (Me.1980).

1. In pertinent part, section 1988 provides:
   In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985

and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
   42 U.S.C. § 1988 (1981).

action to obtain general assistance from his town.

We affirm the judgment below. We reach that result, however, for reasons other than those advanced by the Superior Court.

The Plaintiff, Hervey Jackson, of Searsport, on February 20, 1982, filed an application for general assistance with the Town of Searsport. The Town failed to grant or deny his application within twenty-four hours as required by 22 M.R.S.A. § 4504(3)(C) and Searsport's general assistance ordinance.[2]

On March 5, 1982, the Plaintiff reapplied for general assistance. At that time he also requested a "fair hearing" on the Town's failure to act on his February 20, 1982, application. No such hearing was held, in apparent violation of both 22 M.R.S.A. § 4507 and the town ordinance.[3]

On March 8, 1982, the Plaintiff filed a complaint in Superior Court (Waldo County) seeking from the Town and Ronald F. Handley, its then Town Manager and General Assistance Administrator, not only both declaratory and injunctive relief but also compensatory and punitive damages for the Town's failure to act on his application within the twenty-four hour statutory period.[4] The relief claimed was predicated on our general assistance statute, the Searsport ordinance, and the fourteenth amendment to the United States Constitution.[5] To assert his constitutional claim the Plaintiff invoked 42 U.S.C. § 1983;[6] additionally, he sought attorney's fees pursuant to 42 U.S.C. § 1988.

On April 26, 1982, the Superior Court held a consolidated hearing on the application for injunctive relief and on the merits pursuant to M.R.Civ.P. 65(b)(2), the Plaintiff previously having dismissed his damage claims. In an order entered four days later, the Superior Court (a) required the Town of Searsport to grant or deny the Plaintiff's applications by May 3, 1982; and (b) directed that a fair hearing be held within seven days, should the Plaintiff's applications be denied. This order did not specify whether the court was relying on state or federal grounds in granting this relief. The court

2.  22 M.R.S.A. § 4504(3)(C) (1980) requires that every municipality have a general assistance ordinance; each such ordinance shall "[p]rovide that relief shall be furnished or denied to all eligible applicants within 24 hours of the date of submission of an application."

   Accordingly, the "General Assistance Rules and Regulations" of the Town of Searsport state that: "Unless an application is withdrawn, the general assistance administrator must make a decision concerning the applicant's eligibility within 24 hours after completion of the written application form." *Id.* at § III(D) (1977).

3.  Section 4507 states in part:

   Any person aggrieved with a decision, act, failure to act or delay in action concerning his application for general assistance under this chapter shall have the right to a fair hearing .... A hearing shall be held by the municipality within 7 days following the receipt of a written request by the applicant for a fair hearing.

   22 M.R.S.A. § 4507 (1981). Searsport's "General Assistance Rules and Regulations" § VII (1977) tracks this provision.

4.  Such judicial review is clearly contemplated by the Maine general assistance statute, which provides that: "Review of any action or failure to act under this chapter shall be pursuant to the Maine Rules of Civil Procedure, Rule 80-B." 22 M.R.S.A. § 4507 (1980).

5.  In relevant part that Amendment states:

   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

   U.S. Const. amend. XIV, § 1.

6.  This section provides in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

   42 U.S.C. § 1983 (1981).

also denied without explanation the Plaintiff's motion for attorney's fees under section 1988. This timely appeal followed.

In denying the Plaintiff's request for attorney's fees under section 1988, it appears that the Superior Court treated this determination as a matter of judicial discretion.[7] Although on this appeal the parties have focused on the question of whether the reasons articulated by the court were legally sufficient to justify the denial of fees under section 1988, our inquiry proceeds on a more fundamental level, looking first at the scope of section 1988 and then at the nature of the Plaintiff's federal claim.

### Section 1988 Awards in Pendent Claim Actions

Section 1988 allows a court to award attorney's fees to a "prevailing party" in an action under certain civil rights laws, including section 1983. Determining who constitutes a prevailing party for purposes of section 1988 has proven a difficult enough task when solely federal constitutional or statutory claims are asserted;[8] the difficulties compound when a federal claim and one or more state claims are combined in the same suit.[9]

7. The record reflects that the Superior Court denied the Plaintiff attorney's fees principally on the basis of the Defendant's good faith and the circumstance that the Plaintiff was represented in this cause by public interest counsel.

8. For discussion of a representative problem arising in this context see Note, *Civil Rights Attorney's Fees Awards in Moot Cases,* 49 U.Chi.L.Rev. 819 (1982).

9. For excellent discussions of some of the issues in this area see Note, *Civil Rights Attorneys' Fees in Cases Resolved on State Pendent and Federal Statutory Grounds,* 130 U.Pa.L. Rev. 488 (1981) and Wolf, *Pendent Jurisdiction, Multi-Claim Litigation, and the 1976 Civil Rights Attorney's Fees Awards Act,* 2 W.New Eng.L.Rev. 193 (1979).

10. "[A] court should 'avoid expressing opinions on constitutional law whenever a nonconstitutional resolution of the issues renders a constitutional ruling unnecessary.'" *State v. Bassford,* 440 A.2d 1059, 1061 (Me.1982) (quoting *Your Home, Inc. v. City of Portland,* 432 A.2d 1250, 1257 (Me.1981).

In an action, such as the case at bar, where a claim asserted under section 1983, is appended to state claims, a problem arises. Consistent with the sound judicial policy which favors nonconstitutional resolution of cases,[10] a court may prefer to rest its decision on state, rather than federal, grounds. The question then becomes whether the party has "prevailed" under section 1983, so as to allow an award of attorney's fees under section 1988.

If the "prevailing party" requirement of section 1988 were read strictly, it would not permit an award of attorney's fees unless a court actually passed upon a party's section 1983 claim and ruled on it in that party's favor. The legislative policy behind section 1988 of encouraging private enforcement of civil rights and the judicial policy of avoiding constitutional decisionmaking would work at cross purposes.[11]

The drafters of the Civil Rights Attorney's Fees Awards Act acted to forestall this dilemma. The House Report noted that in a situation where a party joins federal and state claims and prevails only on the state claim, attorney's fees may be awarded if (1) the federal claim is substantial, and (2) the state claim arises out of a "common nucleus of operative fact."[12]

11. For example, a party with a valid constitutional claim under section 1983 and a valid claim under state law would have to choose between asserting both and possibly losing the fee, on the one hand, and on the other, taking his chances alone on the vagaries of constitutional law.

12. The House Report states:

To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines,* 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine,* 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra; United*

The "substantiality" requirement has generated considerable debate. The federal claim must be a substantial one, *Maher v. Gagne,* 448 . U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980); the requisite degree of substantiality is not so apparent.[13] This confusion notwithstanding, two principles are clear. A party who only asserts and prevails on a state law claim cannot recover attorney's fees under section 1988. Likewise, if that same party joins with his state claim a federal claim under section 1983 which is adjudicated to be without merit with respect to the award of attorney's fees he stands in no different position.[14] *Bunting v. City of Columbia,* 639 F.2d 1090, 1095 (4th Cir.1981); *Bly v. McLeod,* 605 F.2d 134, 139 (4th Cir.1979); *Gumbhir v. Kansas State Board of Pharmacy,* 231 Kan. 507, 517–23, 646 P.2d 1078, 1087–90 (1982), *petition for cert. filed,* —— U.S. ——, 103 S.Ct. 724, 74 L.Ed.2d 950, 51 U.S.L.W. 3199 (U.S. Sept. 9, 1982) (No.

*See also Reel v. Arkansas Department of Correction,* 672 F.2d 693, 698–99 (8th Cir.1982); *Haywood v. Ball,* 634 F.2d 740, 743 (4th Cir.1980); *Bess v. Toia,* 66 A.D.2d 844, 844–45, 411 N.Y.S.2d 651, 653 (N.Y.App.Div.1978).

To allow the assessment of attorney's fees under section 1988 when a meritless federal claim is asserted, in no way would promote the private enforcement of civil *rights.* Moreover, to require the award of attorney's fees merely because a meritless federal claim is tagged onto a valid state claim would create serious federalism problems.

In our state, as elsewhere in this country, the "American Rule" for attorney's fees is followed: each party pays the costs of his own lawyers.[15] Here the rule is: "Except for some kinds of tortious conduct, the Maine state courts have no authority to include attorney's fees as part of costs in

---

*Mine Workers v. Gibbs,* 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra* at 725, 86 S.Ct. at 1138.

H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 4 n. 7 (1976), *reprinted in* Staff of Senate Comm. on the Judiciary, 94th Cong., 2d Sess., *Civil Rights Attorney's Fees Awards Act of 1976 Source Book* 212 (Comm.Print 1976).

**13.** *See* Note, *Civil Rights Attorney's Fees in Cases Resolved on State Pendent and Federal Statutory Grounds, supra* note 9, at 518–19; Wolf, *supra* note 9, at 239.

The confusion about the required degree of substantiality is in part attributable to the House Report's reference to *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In *Hagans,* the Supreme Court elaborated the substantiality requirement for *federal question* jurisdiction in the federal courts. The Court referred to prior decisions wherein it denied jurisdiction because asserted federal claims were either " 'so attenuated and unsubstantial as to be absolutely devoid of merit,' . . . 'wholly insubstantial,' . . . 'obviously open to discussion.' " 415 U.S. at 537, 94 S.Ct. at 1379. Justice Rehnquist, in dissent, responded: "Under today's rationale it appears sufficient for jurisdiction that a plaintiff is able to plead

his claim with a straight face." 415 U.S. at 564, 94 S.Ct. at 1392.

It should be noted that the *Hagans* standard is a threshold test for getting into federal court. Deriving originally from the judicial power conferred by Article III, this prospective standard governs a federal court's determination at the outset of litigation of whether it has power to hear a cause.

Grafting the *Hagans* standard onto the necessarily retrospective inquiry of whether a party has prevailed for purposes of section 1988 has scant support in logic. The argument that the *Hagans* standard is one with which the federal courts are already familiar is no justification at all when a state court hears pendent claims.

**14.** This conclusion is reinforced by the decision in *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) where in referring to section 1988 awards pendente lite, the Court stated: "[I]t seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Id.* at 757, 100 S.Ct. at 1989. *See* Note, *Civil Rights Attorney's Fees Awards in Moot Cases, supra* note 8, at 828–29.

**15.** *See generally,* Note, *Civil Rights Attorneys' Fees in Cases Resolved on State Pendent and Federal Statutory Grounds, supra* note 9, at 488 n. 1.

the absence of statutory authorization or agreement of the parties." *Thiboutot v. State,* 405 A.2d 230, 238 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). *See also Vance v. Speakman,* 409 A.2d 1307, 1311 (Me.1979).

While the American Rule is not without its critics,[16] it remains the rule in our state, and it is an essential feature of our judicial process. To allow attorney's fees under section 1988 to parties who assert meritless federal claims along with valid state claims would in many cases effectively abrogate the American Rule. Any person with a claim founded in state law against a state or its subdivisions would have every incentive to interject a section 1983 claim into the action, regardless of its validity. We will not so easily infer as drastic an intrusion by Congress into the internal functionings of judicial systems of the several states. As we declared in *Vance v. Speakman,* "a statutory right to recover attorney's fees will be found only in the clearest kind of legislative language." 409 A.2d at 1311. If a federal claim under the civil rights laws has no merit, it cannot serve as the predicate for the imposition of attorney's fees simply because it is appended to a valid state claim. We must, therefore, decide if the Plaintiff in the case at bar had a meritorious claim under section 1983.

### The Section 1983 Claim

Even as an award of attorney's fees under section 1988 is contingent on the existence of a substantial claim under section 1983, so recovery under section 1983 turns on the presence of a federal constitutional or statutory violation. *See Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–2506, 65 L.Ed.2d 555 (1980). In the case before us the Plaintiff alleged no federal statutory violation; his section 1983 claim rests solely on an asserted violation of his fourteenth amendment rights. Specifically, the Plaintiff contends that the Town of Searsport's failure to act on his general assistance application violated his right to procedural due process under the fourteenth amendment.[17]

Procedural due process claims require a two-stage analysis. First, it must be determined if there has been a deprivation of an individual's life, liberty or property interests. Second, if such a deprivation has occurred, a determination must be made as to what process is due under the fourteenth amendment. *Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

As the first stage of this analysis, then, we must decide whether the Town of Searsport deprived the Plaintiff of any "property" interest safeguarded by the fourteenth amendment.[18] It is helpful in this regard to carefully review the interaction between the Plaintiff and the Town up until the Plaintiff filed his complaint in Superior Court.

Jackson filed his first general assistance application on February 20, his second application and a fair hearing request on

---

16. *See, e.g.,* Rowe, *The Legal Theory of Attorney Fee Shifting: A Critical Overview,* 1982 Duke L.J. 651 (1982).

17. Although the Plaintiff's complaint loosely alleged a violation of his fourteenth amendment rights, his trial memorandum argued more specifically that the Town's inaction violated his due process rights. Consonant with the policy of M.R.Civ.P. 8(f) that pleadings be construed so as to do "substantial justice" we read his complaint and trial memorandum together to state a claim under the Due Process Clause of the fourteenth amendment. Counsel are cautioned, however, that particularly in the civil rights area, pleadings should precisely spell out any constitutional claims which may be asserted.

No substantive due process violation is alleged or apparent in this action; accordingly, we need only consider the procedural due process implications of the Town's inaction.

18. No life or liberty interests are implicated in this action.

March 5, and his complaint in Superior Court on March 8, 1982. We are thus concerned with a period of sixteen days. During this period Jackson's application was not granted; neither was it denied. Action simply was deferred by the Town, in violation of both the Maine general assistance statute and Searsport's town ordinance. The first question we must decide is whether the Plaintiff had a constitutionally protected property interest in the timely processing of his application.

This case does not present the question of whether a person currently receiving general assistance has a constitutionally protected property interest in the continued receipt of that assistance. *Cf. Goldberg v. Kelley,* 397 U.S. 254, 261–63, 90 S.Ct. 1011, 1016–18, 25 L.Ed.2d 287 (1970). Neither does it present the question of whether an arbitrary *denial* of general assistance to an eligible, first-time applicant would infringe any property right.[19] Instead, the property right asserted here derives from an administrative timetable this State has imposed on municipalities for processing general assistance applications. In short, the question is whether there is a property right in *procedure.*

We have never in the past accorded *procedure* the status of a property right. The implications of treating all statutory procedures as property interests are momentous. Any violation of state or municipal procedure would automatically be transformed into a constitutional violation, on which a federal suit under section 1983 could be brought immediately.[20] Concern that the fourteenth amendment is becoming a "font of tort law," *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), would be overshadowed as enforcement of the administrative procedures of states, municipalities and their agencies became the domain of the federal courts, with the added threat of demand for attorney's fees always looming on the horizon.

Although the concept of property has evolved significantly from the era when the "right-privilege" distinction controlled,[21] it has not reached the point where a statutorily prescribed timetable for the administrative consideration of general assistance applications has become a property right. Property and procedure still remain functionally distinct concepts. Professor Van Alstyne's explanation of due process is instructive:

> As the fifth and fourteenth amendments read in fact, due process is not itself a protected entitlement. Rather, the sole protected interests are "life, liberty, [and] property." Due process stands in relation to these not as an equivalent constitutionally established entitlement, but only as a condition to be observed insofar as the state may move to imperil one of the named substantive interests. That is:

---

19. We note the difficult issues which would be presented by a denial of benefits of which an applicant has no "present enjoyment." *Compare* J. Nowak, R. Rotunda, and J. Young, *Constitutional Law* 491–94 (1978) *with* L. Tribe, *American Constitutional Law* 518–19 (1978). Of course, it is possible that under some circumstances prolonged municipal inaction on an application for general assistance would be tantamount to a denial of benefits. We do not find this the case in the present action in light of: (1) the evidence in the record indicating good faith on the part of the Town; and (2) the relatively short period of inaction involved here.

20. After *Patsy v. Board of Regents,* —— U.S. ——, ——, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (U.S., 1982), it is clear that no exhaustion of state administrative remedies would be necessary prior to the institution of suit in federal court.

The threat of such suits would definitely discourage states from establishing administrative procedures according greater protections than required by the United States Constitution.

21. *See generally* Reich, *The New Property,* 73 Yale L.J. 733 (1964); Van Alstyne, *The Demise of the Right-Privilege Distinction in Constitutional Law,* 81 Harv.L.Rev. 1439 (1968); Monaghan, *Of "Liberty" and "Property,"* 62 Cornell L.Rev. 405 (1977); Van Alstyne, *Cracks in "The New Property": Adjudicative Due Process in the Administrative State,* 62 Cornell L.Rev. 445 (1977); Terrell, *"Property," "Due Process," and the Distinction Between Definition and Theory in Legal Analysis,* 70 Geo.L.J. 861 (1982).

No State shall deprive any person of life, liberty, or property, without due process of law . . . .

Insofar as the state may seek to divest one of his life, some aspect of his liberty, or some modicum of his property, then it may yet be able to do so assuming that the condition of due process is met. But procedural due process appears never to be anything more than a kind of "constitutional condition." It is evidently not a free standing human interest.[22]

In sum, while procedure may serve to protect property rights, it does not, by that association, itself become a property interest. In the case before us, there is not even the benefit of such an association. The Plaintiff had no preexisting interest in general assistance benefits. As the Supreme Court stated in *Board of Regents v. Roth:* "The Fourteenth Amendment's procedural protection of property is a safeguard of *interests that a person has already acquired* in specific benefits." 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972) (emphasis added). More recently the Court stated: "A state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right. Plainly, however, the underlying right must have come into existence before it can trigger due process protection." *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 463, 101 S.Ct. 2460, 2463, 69 L.Ed.2d 158 (1981) (citations omitted).[23]

The Town's failure to decide on the Plaintiff's applications or to hold a fair hearing within the prescribed periods did violate state law. It is well-established, however, that, "[v]iolation of local law does not necessarily mean that federal rights have been invaded." *Paul v. Davis,* 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (quoting *Screws v. United States,* 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945).[24] Moreover, "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." *Slotnick v. Staviskey,* 560 F.2d 31, 32 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). We conclude that the Town of Searsport's failure to follow the statutory procedures for processing his general assistance applications infringed no constitutionally protected property interest of the Plaintiff.[25]

Arriving now at the second stage of our analysis, even if the Plaintiff had been deprived of a constitutionally protected property interest, we would not be persuaded that he has asserted a meritorious due process claim. We reach this conclusion with specific reference to the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

*Parratt,* read together with the Court's earlier decisions in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), marks the emergence of a major shift in the Supreme Court's analysis of procedural due process claims.[26] The central feature of this new

22. Van Alstyne, *Cracks in "The New Property," supra* note 21 at 452.

23. As Professor Davis explains: "Due process protects 'property' only when a property 'right' is created by nonconstitutional law." 2 K. Davis, *Administrative Law Treatise* § 11.3 (2d ed. 1979).

24. As the Court noted in *Snowden v. Hughes,* "[m]ere violation of a state statute does not infringe the federal Constitution." 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944).

25. *See generally United States v. Jiles,* 658 F.2d 194, 200 (3d Cir.1981); *Molgaard v. Town of* Caledonia, 527 F.Supp. 1073, 1079–80 (E.D. Wis.1981).

26. *See generally* Friedman, *Parratt v. Taylor: Opening and Closing the Door on Section 1983,* 9 Hastings Const.L.Q. 545 (1982); Kirby, *Demoting 14th Amendment Claims to State Torts,* 58 A.B.A.J. 166 (1982); Kupfer, *Restructuring the Monroe Doctrine: Current Litigation Under Section 1983,* 9 Hastings Const.L.Q. 463 (1982); Nahmed, *Constitutional Accountability in Section 1983 Litigation,* 68 Iowa L.Rev. 1 (1982); Comment, *Federalism, Section 1983 and State Law Remedies: Curtailing the Federal Civil Rights Docket by Restricting the Underlying*

approach is a focus on the availability of state-law remedies which prevent a deprivation of life, liberty or property from becoming a deprivation without due process.

In *Paul,* a defamation action brought under section 1983, the Court first intimated that state tort law might constitute adequate "process" to protect a person's liberty interests. 424 U.S. at 712, 96 S.Ct. at 1165–66.[27] In *Ingraham,* a case involving corporal punishment in a public school, the Court concluded that a constitutionally protected liberty interest was implicated, but held that "the traditional common-law remedies are fully adequate to afford due process." 430 U.S. at 672, 97 S.Ct. at 1413.

In *Parratt* the Court was faced with a section 1983 claim by a prisoner who alleged that the loss by prison officials of a "hobby kit" which he had ordered by mail constituted a deprivation of property without due process. In language quite appropriate for the case at bar the Court concluded:

> [T]he respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation. The State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State.

451 U.S. at 543, 101 S.Ct. at 1917. Although the factual circumstances of the instant case diverge somewhat from those present in *Parratt,* we are persuaded that the principles enunciated in that decision apply with equal force here.

As was the case in *Parratt,* if the Plaintiff was deprived of any "property," it was in derogation of—and not according to—established procedure. In terms of the availability of a state-law remedy, the case for such a remedy is much stronger here than in *Parratt.* In *Parratt* the respondent was not deemed to have suffered any due process violation because of the availability to him of a common law tort action. Here instead, the Plaintiff had a *statutory* right to judicial review, a right of which he took full advantage.[28]

The only potentially significant factor distinguishing the instant case from *Parratt* is that the record here indicates at least a degree of intentional action on the part of the Town in not acting in a timely fashion on the Plaintiff's applications. In *Parratt,* only a negligent deprivation was alleged. This divergence is not fatal.

*Parratt* relied on *Ingraham,* which involved intentional corporal punishment. Read together, *Paul, Ingraham* and *Parratt* lead to the conclusion that an intentional taking of property may be adequately redressed through state-law remedies. The intentional-negligent distinction, moreover, is irrelevant to the question of the availability and adequacy of state procedures to satisfy the requirements of due process. We agree fully with the courts and commentators who have concluded the principles announced in *Parratt* apply to both negligent and intentional conduct by state

*Right,* 43 U.Pitt.L.Rev. 1035 (1982); Note, *Constitutional Law—Civil Rights—Negligent Injury by the State is Not Cognizable Under 42 U.S.C. Section 1983 When the State Provides Adequate Tort Claims Procedure,* 56 Tul.L.Rev. 1441 (1982); Note, *Defining the Parameters of Section 1983: Parratt v. Taylor,* 23 B.C.L.Rev. 1219 (1982).

27. *See* Comment, *Federalism, Section 1983 and State Law Remedies, supra* note 26, at 1051.

28. *See supra* note 4.

officials.[29]  Accordingly, we conclude that even if a legitimate property interest were involved, our State procedure available to, and indeed invoked by, the Plaintiff would satisfy the due process requirements of the fourteenth amendment.

### Conclusion

The only issue we have not addressed is that which was central to the written and oral arguments of both counsel—whether the Superior Court's denial of attorney's fees to the Plaintiff was an abuse of discretion.  Under our analysis, as this case was then postured the Superior Court had no discretion to exercise.  Anything we might say on that issue would be pure dictum, so we shall abstain.

Here the Plaintiff's section 1983 claim was without merit.  The Court could not award attorney's fees under section 1988 because the Plaintiff's only valid claim was grounded in state law.  The Superior Court's reasoning may have been in error, but so long as its conclusion was correct, the judgment must be affirmed.  *Allstate Insurance Company v. Lyons,* 400 A.2d 349, 352 (Me.1979).

The entry, therefore, is:

Appeal denied.

Judgment affirmed.

All concurring.

---

**29.**  *See Engblom v. Carey,* 677 F.2d 957, 965 (2d Cir.1982) (eviction); *Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir.1982) (removal of children by welfare officers); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981) (assault and battery); *Spilka Bus Corp. v. Board of Education,* 83 A.D.2d 853, 854, 441 N.Y.S.2d 740, 741 (N.Y.App.Div.1981) (termination of contract).  *See also* Kirby, *supra* note 26, at 171; Nahmod, *supra* note 26, at 7 n. 51; Note, *Defining the Parameters of Section 1983, supra* note 26, at 1242–43; Note, *Constitutional Law—Civil Rights, supra* note 26, at 1452; Comment, *Federalism, Section 1983 and State Law Remedies, supra* note 26, at 1073–76.