**Gary T. MAHANEY**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 12, 1992.

Decided July 15, 1992.

Michael E. Carpenter, Atty. Gen., Charles K. Leadbetter, and Joseph Wannemacher (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Kristin A. Gustafson (orally), Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Gary T. Mahaney appeals from the denial of his petition for post-conviction review by the Superior Court (Kennebec County, *Kravchuk, J.*). On appeal he contends that: (1) the parole board erred in failing to follow its own procedure; (2) he was deprived of his absolute right to appear before the board; (3) his absence from the parole board hearing constituted a denial of due process; and (4) he was denied equal protection because he was treated differently than inmates housed within the state.

In 1980 Mahaney was sentenced to life imprisonment at the Maine State Prison for murder. On direct appeal we affirmed the conviction. *State v. Mahaney*, 437 A.2d 613 (Me.1981). Under the statute applicable to Mahaney's life sentence, he was eligible for parole on completion of 15 years less good time. *See* 34-A M.R.S.A. § 5803(3) (1988).[1] After serving some of his sentence at Thomaston, Mahaney was transferred as a security risk to the federal prison at Lewisburg, Pennsylvania. *See* 34-A M.R.S.A. § 3062 (Supp.1991).

Mahaney was eligible to be considered for parole in October 1989. The Maine Parole Board decided not to require Mahaney's return for a release hearing. Instead, the board asked the United States Parole Commission to hold a "courtesy hearing" on Maine's behalf concerning Mahaney's release. The commission agreed to do so, scheduling Mahaney for a December hearing in Pennsylvania. Initially, Mahaney refused to participate in the parole commission's courtesy hearing. He subsequently agreed to participate in the June 1990 hearing. The federal hearing examiners understood that they would not be making the actual parole release decision, but rather were simply facilitating the hearing process.[2] After the hearing, at which Mahaney participated, the federal examiners recommended that he serve 20 years before being released for parole.

After considering the written material submitted by the United States Parole Commission and the audiotape of Mahaney's Lewisburg hearing, examining prison records of Mahaney's current and previous incarcerations, and considering his parole plan and records of his previous releases on parole, the board denied him parole as of the date of the hearing, notifying him that he would be reconsidered in three years. Mahaney filed a petition for post-conviction review and the matter was submitted to the Superior Court on an agreed statement of facts and joint exhibits. Following a hearing, the court denied Mahaney's petition. Mahaney submitted a request for a certificate of probable cause to appeal the court's denial of post-conviction relief. We granted a certificate of probable cause. *See* 15 M.R.S.A. § 2131(1) (Supp.1991).

---

1. Because the date of the murder was prior to the effective date of the Maine Criminal Code, Mahaney could elect whether to be sentenced under the code. *See* 17-A M.R.S.A. § 1(2) (1983). Mahaney chose to be sentenced under the pre-code statute and received the mandatory sentence of life imprisonment pursuant to 17 M.R.S.A. § 2651, *repealed by* P.L. 1975, ch. 499, § 15 (effective May 1, 1976).

2. These examiners had not previously been involved in a courtesy hearing for the State of Maine and the Maine authorities did not provide the federal board with a copy of its parole guidelines.

## I.

■ First, Mahaney contends that the board did not provide timely notice of the parole hearing or the prehearing interviews, as required by the board's own rules. The interviews are designed to prepare an inmate for the parole release hearing through a review of the board's parole criteria. The parole board rules provide that an inmate is to have a prehearing interview with a parole officer approximately one year before the eligibility date and another interview at least 60 days before the release hearing. As a result Mahaney argues that he was not informed of the board's procedures and was ill-equipped to provide the information Maine deemed important in making its parole decision.

The petitioner in a post-conviction review action has the burden of proving both the defect claimed and that he was prejudiced thereby. *See* 15 M.R.S.A. § 2125 (Supp. 1991). Mahaney has not shown that he did not understand any of the release criteria or how an interview with Maine officials would have benefited him. Moreover, the record does not reflect that Mahaney was prejudiced by the board's failure to follow its procedural rules. Although the board failed to follow the prerelease procedures in the parole manual, that failure did not entitle Mahaney either to release on parole or return to the State of Maine for an immediate parole hearing.

■ The board sent Mahaney a letter in August 1989 informing him of his eligibility for parole and providing a copy of the "Initial Hearing Notice" setting forth the release criteria used by the Maine Parole Board. Although Mahaney was first scheduled for a hearing in October 1989, he refused to participate until June 1990, eleven months after the initial notice. This schedule meets the rule's notice requirement of "approximately one year." In addition, the release criteria provided by the board were sufficient to inform Mahaney of the factors the board considers in making a parole decision.[3]

## II.

■ Mahaney also argues that he has an absolute right under 34–A M.R.S.A. § 5211 (1988) to be present at the Maine Parole Board's hearing and that the release hearing conducted by the Lewisburg authorities does not satisfy this statutory provision. Section 5211(4)(B) provides:

> If the recommendation of the administrative assistant is to deny parole, the board shall afford the committed offender a hearing before the board and the board may not deny parole without affording the committed offender a hearing.

Mahaney contends that the language "a hearing before the board" clearly requires the board to allow him to appear personally at the hearing.

■ A fundamental rule of statutory construction is that words must be given their plain and ordinary meaning. *See Mullen v. Liberty Mut. Ins. Co.*, 589 A.2d 1275, 1277 (Me.1991). We seek to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical. *See State v. Niles*, 585 A.2d 181, 182 (Me.1990). The intent and object of the Legislature in enacting the law are to be ascertained and given effect, if the language be fairly susceptible of such a construction. *See Davis v. State*, 306 A.2d 127, 130 (Me.1973). Such interpretation of the words used will be adopted as shall appear most reasonable and best suited to accomplish the objects of the statute.

The end sought in this section of the parole statute is that the inmate's case be reviewed by the board in order to assess his risk to society and his chance of success if released. The statute only requires that the inmate have a *hearing* before the parole board. The statute does not declare that the inmate *personally appear* at the hearing. Therefore we conclude that the

---

**3.** Mahaney did confer with his current Lewisburg case manager who sent material to the Maine board in anticipation of the release hearing. Mahaney also conferred with his previous case manager, William Smith, who was Mahaney's spokesperson at the courtesy hearing.

decision whether to permit an inmate to appear before the board is discretionary.

## III.

Next, Mahaney claims that the decision denying his release deprived him of his liberty interest without due process within the meaning of the fourteenth amendment of the United States Constitution and article I, section 6–A of the Maine Constitution.[4] To determine whether an individual has been deprived of his right to procedural due process, we employ a two-step analysis. *See Jackson v. Inhabitants of Searsport*, 456 A.2d 852 (Me.1983). First, we must determine whether the governmental action has resulted in a deprivation of life, liberty, or property. *Id.* at 856. If a deprivation has occurred, we must then decide what process is due the individual under the fourteenth amendment. *Id.* Due process is a flexible concept that typically requires consideration of a number of factors, including the importance of the individual's interest, the potential for governmental error, and the magnitude of the state's interest. *See Giberson v. Quinn*, 445 A.2d 1007, 1008 (Me.1982).

In determining whether an expectation of parole is a protected liberty interest, the Supreme Court has held that since "the possibility of parole provides no more than a hope that the benefit will be obtained," an inmate's eligibility for parole, in and of itself, is not a liberty interest protected by due process. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–2106, 60 L.Ed.2d 668 (1979). The *Greenholtz* Court did, however, recognize that state statutes governing parole may create a protectable interest entitling a prospective parolee to some constitutional protection. *Id.* Mahaney contends that the liberty interest is the right to a meaningful hearing by the parole board, which includes a personal appearance. Mahaney asserts that a personal appearance before the board is a critical part of the decisionmaking process and that the hearing before the federal panel was an inadequate substitute since the federal panel was unfamiliar with Maine's parole guidelines and the criteria considered relevant to the Maine board were not fully explored at the federal hearing.[5]

In support of this theory, Mahaney asserts that the parole statute, 34–A M.R.S.A. § 5803, and the parole rules that list the criteria the board will use to evaluate each inmate's case,[6] taken together create a legitimate expectation that release on parole will not be denied unless 1) the board conducts a hearing prior to the date of eligibility and 2) the inmate is permitted to appear personally before the board. We reject Mahaney's contention. Since there is no statutory right to appear personally before the board and the parole decision is one that must be made largely on the basis of the inmate's files, the procedure used in this case provides adequate safeguards against serious risks of error and thus satisfies due process. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

## IV.

As a state agency the parole board's policies and decisions are subject to the commands of the equal protection clause. *See Avery v. Midland County, Texas*, 390 U.S. 474, 481, 88 S.Ct. 1114,

---

4. This court has adhered to the principle that the Maine Constitution and the United States Constitution are declarative of similar concepts of due process. *See Penobscot Area Housing Dev. Corp. v. City of Brewer*, 434 A.2d 14, 24 n. 9 (Me.1981).

5. Mahaney was initially advised of the information that is significant to the board in making its decision and was given the opportunity to present that information to the federal examiners. He has thereby been provided with an effective opportunity to present any special considerations demonstrating why he is an appropriate candidate for parole.

6. The rules promulgated under the authority of 34–A M.R.S.A. § 5211(1) provide that the board will evaluate in each inmate's case the following factors: the adequacy of the parole plan, personal history, criminal history, institutional conduct, previous probation and parole, psychological evaluations, recommendations by the sentencing court, and recommendations and field observations.

1118, 20 L.Ed.2d 45 (1968). In order to find a violation of the equal protection clause, the court must first have some indication that similarly situated persons have not been treated equally. *See Brann v. State,* 424 A.2d 699, 703 (Me.1981). Once it is established that a person is treated differently than similarly situated persons, the court must then evaluate the purpose of the differential treatment. A state is permitted to make distinctions and treat individuals differently, provided that the difference in the treatment "rationally furthers a legitimate state purpose." *Zobel v. Williams,* 457 U.S. 55, 60, 102 S.Ct. 2309, 2313, 72 L.Ed.2d 672 (1983). The test of a "rational relationship" requires proof of facts that may be reasonably conceived to justify the distinction drawn by the state. *See Dishon v. Maine State Retirement System,* 569 A.2d 1216, 1217 (Me.1990).

Mahaney contends that he was denied equal protection under the laws because he was treated differently than prisoners housed within the state. The parole board generally employs a different procedure to conduct parole evaluations on out-of-state inmates than it utilizes for inmates housed within the state. Unlike out-of-state inmates, inmates housed in Maine are usually given the opportunity to attend their parole hearing. As discussed above, however, the decision whether to require an inmate to attend a parole hearing is left to the discretion of the board. Neither the parole statute nor the parole board rules require that an inmate be present at his parole hearing. A legitimate concern both for cost and for security justifies the board in exercising its discretion differently in the case of out-of-state prisoners. Thus the board's exercise of discretion does not deny equal protection simply because in-state prisoners usually appear at their hearing.

The entry is:

Judgment affirmed.

All concurring.