Elroy **WABASHA**, et al., Plaintiffs,

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, Defendant.**

**No. CIV79–4064.**

United States District Court,
D. South Dakota S.D.

Feb. 7, 1984.

Terry H. Gilbert, Christopher D. Stanley, Cleveland, Ohio, and Douglas P. Cummings, Jr., Sioux Falls, S.D., for plaintiffs.

Mark V. Meierhenry, Atty. Gen., of South Dakota, and Mark W. Barnett, Asst. Atty. Gen., Pierre, S.D., for defendant.

## MEMORANDUM DECISION AND ORDER

NICHOL, Senior District Judge.

This action involves an application on behalf of the plaintiffs for an award of attorneys' fees pursuant to 42 U.S.C. section 1988. Plaintiffs premised their application for attorneys' fees upon the judgment filed by this Court on February 18, 1983. Plaintiffs' application presented the following issues: (1) whether the plaintiffs were "prevailing parties" pursuant to 42 U.S.C. section 1983; and (2) if the plaintiffs were prevailing parties, what constitutes a "reasonable fee" under the circumstances?

Resolving these issues requires an examination of the nature and results of the underlying litigation. The following is a summary of the unpublished memorandum decision and order of this Court in the underlying action. *Wabasha v. Solem,* 79–4064 (D.S.D. April 13, 1982).[1] Plaintiffs on May 21, 1979, filed a class action suit against the defendant Herman Solem, on behalf of all Native American inmates confined in the Adjustment Center at the South Dakota Penitentiary. This class action civil rights suit brought under 42 U.S.C. sections 1983, 1985, and 1986, alleged that the conditions of confinement in the Adjustment Center constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The complaint further alleged that the procedures governing initial confinement in the Adjustment Center and transfers within the Adjustment Center violated the Fifth and Fourteenth Amendment guarantees of procedural due process and also that these procedures violated equal protection as guaranteed by the Fourteenth Amendment.

A motion for a preliminary injunction was filed simultaneously with the complaint; however, no hearing was requested or held at that time. The defendant answered the complaint on June 12, 1979. On June 2, 1980, at the second pretrial conference the plaintiff class was enlarged, over the objection of the defendant, to include all inmates who have or will be subjected to disciplinary confinement in the Adjustment Center with a subclass of all Native American inmates. The Court certified the class, as amended, at the pretrial conference but reserved ruling on whether the plaintiffs fairly and adequately protected the interests of the class, as required by Fed.R. Civ.P. 23(a)(4).

A court trial commenced on June 3, 1980. The trial included a tour of the Adjustment Center by the Court on June 3, 1980. In open court on June 6, 1980, the plaintiffs renewed their previous motion for a preliminary injunction. This motion sought to enjoin the defendant from confining any inmates in the plaintiff class to the segregation section (most restrictive level of confinement) of the Adjustment Center for a period in excess of thirty (30) days. A hearing was held on the motion on June 9, 1980, at which the defendant agreed to change the written policy regarding the confinement in the punitive segregation section of the Adjustment Center by amending Policy Statement 3–26 of the Living Guide and Regulation of the South Dakota Penitentiary 1976. This change in written policy limited confinement in the segregation unit to a maximum of thirty (30) days. The defendant, however, contended that this amendment reflected only a change in written policy but not a change in actual practice since no one had been confined to segregation more than nine (9) days since August, 1978. The Court denied the plaintiffs' motion for a preliminary injunction since the amendment of the policy obviated the need for the requested relief.

The trial reconvened December 8, 1980, and continued through December 11, 1980.

---

1. No appeal having been taken, this decision has become final.

The Court filed its memorandum decision and order on April 13, 1982. Four issues were presented to the Court for resolution:

(1) Whether the action was properly maintained as a class action;

(2) Eighth Amendment issues related to confinement in the Adjustment Center;

(3) Due process (Fifth and Fourteenth Amendments) contentions with respect to disciplinary and classification procedures governing placement and detention in the Adjustment Center; and

(4) Racial discrimination as to placement and continued confinement in the Adjustment Center under the equal protection clause of the Fourteenth Amendment.

The Court held that the plaintiffs' action was properly maintained as a class action pursuant to Fed.R.Civ.P. 23(a), (b). The Court did not, however find that the conditions in the Adjustment Center when considered in toto to be intolerable or shocking to the conscience under the Eighth Amendment test established in *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958); *See also, Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Bono v. Saxbe,* 620 F.2d 609 (7th Cir.1980). The Court did, however, advise the defendant to consider changing or modifying certain individual conditions and found that there were some conditions that must be changed.

The Court considered separately the individual conditions challenged by the plaintiffs on constitutional grounds. A summary of the Court's findings with respect to each of the challenged conditions are as follows:

(1) *Thirty day limit on punitive isolation* —

(a) Segregation—The 5-day minimum and 30-day maximum pursuant to the amended policy statement # 3.26 conformed to *Hutto v. Finney, supra,* and was not unconstitutional;

(b) Third Grade—The 5-day minimum and 90-day maximum per offense on the time of confinement did not violate the Eighth Amendment;

(c) Second Grade—The 5-day minimum and 90-day maximum per offense on the time of confinement did not violate the Eighth Amendment.

(2) *Medical and psychiatric care* —No Eighth Amendment violation as to medical and psychiatric care were found. The Court specifically found that medical care was provided when needed and when requested and found for purposes of clarification that psychiatric care like medical care must be provided when medically indicated.

(3) *Lighting* —That the inmates in the Adjustment Center were deprived of adequate lighting—a basic necessity.

(4) *Clothing and shelter* —the Court held that inmates must be provided with a cot, a mattress, and appropriate bedding, which may be taken away if they are used in a destructive manner or the privileges are abused. The Court did not, however, find any violations of this requirement in fact in the Adjustment Center but merely established this requirement for future guidance.

(5) *Ventilation* —The ventilation was found to be constitutionally adequate.

(6) *Sanitation* —the Court prescribed that a program of daily trash collection and periodic pest control must be instituted, but did not, however, find any Eighth Amendment constitutional violations.

(7) *Diet* —No constitutional violations were found. The T.V. dinners provided were adequate as long as supplements were provided.

(8) *Recreational exercise* —

(a) Segregation and Third Grade—No recreation was allowed or provided by institution policy. The Court found that under the conditions existing in the Adjustment Center—5-day minimum in connection with the opportunity to obtain release via a "kite"—no denial of recreational opportunity ex-

isted but an informed choice not to participate in the limited recreation allowed in Second Grade.

(b) Second Grade and Close Custody II (CCU)—Inmates were allowed 15 minutes of recreation per day in Second Grade and 30 minutes per day in CCU. The Court, however, expressed concern over the limited duration of exercise and nature of the recreation provided, but stopped short of finding any constitutional violations. The Court requested the defendant to reevaluate his policies relating to recreation and exercise but did not order any changes.

(9) *Access to the law library*—Inmates in the Adjustment Center were not denied access to the courts as a result of the limited access to the law library, hence the Court found no constitutional violations. The Court, however, prescribed that reasonable access must be provided to all inmates in the Adjustment Center. Reasonable access would still allow a given number of books per day and require the return of the books before new books could be received. The Court directed the defendant to formulate a plan which would allow reasonable access to law books to all inmates in the Adjustment Center.

(10) *Rehabilitation programs*—The inmates in the Adjustment Center and CCU are not provided access to vocational, educational, or work programs. No constitutional violations were found by the Court with respect to this policy.

(11) *Fire protection*—No constitutional violations were found.

(12) *Personal hygiene*—No constitutional violations were found, but the Court suggested to the defendant that he reevaluate the shower policy to allow if possible a shower on a more frequent basis, but stopped short of ordering them to do so.

(13) *Dark cells*—The use of dark cells was held not to be unconstitutional per se but the Court mandated that a policy be developed and implemented setting forth the circumstances which would trigger such confinement and the conditions of the confinement. The maximum period of such confinement could not, however, exceed twenty-four hours.

(14) *Strip searches*—Routine strip searches without probable cause, of all inmates returning from non-contact visits was ordered to be immediately discontinued as violative of the Eighth Amendment.

The plaintiffs set forth two major procedural due process contentions with respect to the Adjustment Center (Segregation, Third Grade, and Second Grade). The first was that before an inmate can be transferred from Second and Third Grade to Segregation, the inmate must be afforded a second (the first being the proceedings before the disciplinary board which resulted in confinement in the Adjustment Center initially) full-blown due process hearing because such transfers further limit the inmate's privileges. The defendant argued that transfers from one level in the Adjustment Center to another level constituted an intra-institution transfer and as such does not require a due process hearing as long as the inmate's total time in the Adjustment Center does not exceed the ninety (90) day maximum.

This Court held that the initial procedures for confining an inmate to the Adjustment Center fully complied with the requirements of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). No evidence was found to show that the defendant acted unreasonably or arbitrarily in effecting transfers from Third and Second Grade to Segregation as long as such transfers did not result in confinement beyond ninety (90) days for any one offense. The Court, in addition, found that conditions in all levels were essentially the same, although the privileges afforded to inmates in the various levels was different. The Court was not willing in the absence of an unreasonable or arbitrary exercise of its discretion with respect

to meting out discipline and implementing penal programs to interfere with the defendant's day-to-day programming within the Adjustment Center.

The plaintiffs' second procedural due process contention was that indeterminate confinement in the Adjustment Center without a meaningful review of their confinement based on objective criteria violated due process. The Court held that the inmates so confined were not entitled to a full-blown due process hearing each time he comes up for review.

The preexisting policy of the defendant with respect to review of indeterminate sentences was a review by the Classification Review Board twenty days after the imposition of sentence and if confinement was continued then such confinement was reviewed every fifteen days until release. The inmate was not present at the review hearing nor did he receive a written report from the board indicating whether confinement was to continue, date of the next review, reasons for continued confinement, and what must be done to secure release. The Court held that minimal due process requires that the inmates be given advance notice of the hearing date, opportunity to submit a written report, and if confinement is continued the reasons for continued confinement, what was expected to obtain release, and the objective criteria to be applied at the next review hearing.

The defendant's original policy with respect to Close Custody II (CCU) (Administrative Segregation) was that the Classification Review Board would make such placements without notice or a hearing. During the trial the defendant consented to change in the procedures employed by the Classification Review Board to provide inmates a formal due process hearing prior to placement in the CCU. The defendant contended that this change in policy with respect to due process to be followed in making placements in CCU was not constitutionally mandated.

The Court, based upon *Wolff v. McDonald, supra,* and *Enomoto v. Wright,* 462 F.Supp. 397 (N.D.Cal.1976), *aff'd* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), found that the rules and regulations of the South Dakota Penitentiary created a justifiable expectation that an inmate could remain in the general prison population and not be confined to CCU as long as he obeys the rules and regulations. The defendant having created this liberty interest cannot arbitrarily take it away. The Classification Review Board, the Court held, must comply with minimum due process procedures (notice and hearing) before transferring an inmate from the general population to CCU. The Court further required the Classification Review Board to provide the inmates a list of the objective criteria it applies in making such determinations and if confinement in CCU was to be continued, the inmate must be provided with the reasons and the conduct required to obtain release as required by *Kelly v. Brewer,* 525 F.2d 394 (8th Cir.1975).

The plaintiffs' final claim was that Native Americans as a subclass were discriminated against in the disciplinary process in that they were sent more often to the Adjustment Center and spent longer time there than whites. In support of their equal protection claim the plaintiffs analyzed and presented data from inmate disciplinary files and produced computer printouts analyzing the statistics. The statistics presented by the plaintiffs were severely flawed since race was the only controlled variable used in the analysis. The Classification Review Board, however, considers a number of other factors in reaching a decision about disciplinary measures which were not controlled in the plaintiffs' analysis based only on race. The Court found that recidivism, not racism, accounted for the sentencing disparities. The Court held that the plaintiffs had not produced sufficient evidence of a racially disproportionate impact, hence failed to establish a prima facie case of racial discrimination. *See Inmates of Nebraska v. Greenholtz,* 567 F.2d 1368 (8th Cir.1977), *cert. denied* 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 140 (1978).

Judgment was filed by the Court on February 18, 1983, consistent with the memo-

randum decision and order. The judgment entered by the Court reflected post-trial changes made by the defendant in response to the memorandum decision and order. The judgment sets out a policy with respect to such areas as lighting, trash collection, recreation, showers, access to law library, strip searches upon return from noncontact visits discontinued, except for reasonable suspicion of contraband or other prohibited items, and review of confinement of CCU inmates. The above changes in policy were incorporated into the Living Guide and Regulation of the South Dakota State Penitentiary.

Plaintiffs' attorneys have separately moved or applied to the Court for an award of attorneys' fees pursuant to 42 U.S.C. section 1988. Plaintiffs requested an award of attorneys' fees pursuant to 42 U.S.C. section 1988 based on the following lodestar (reasonable hours times reasonable rate) calculations:

| Name of Attorney/ Paralegal | No. of In-Court Hours | No. of Out-Of-Court Hours | Travel Time | Hourly Rate | Subtotal |
|---|---|---|---|---|---|
| Christopher D. Stanley | 50.0 | 174.0 | 48.0 | $125 | $34,000.00 |
| Terry H. Gilbert | 48.0 | 94.5 | 32.0 | 125 | 21,812.50 |
| Douglas P. Cummings, Jr. | 50.0 | 90.0 | 0.0 | 40/* 30 | 4,700.00 |
| David Kemp (paralegal) | 0.0 | 409.5 | 0.0 | 15 | 6,142.50 |
| | 148.0 | 768.0 | 80.0 | | $66,655.00 |

* ($40.00 in-court and $30.00 out-of-court)

The defendant submitted a detailed analysis of plaintiffs' request for attorneys' fees and made recommendations. The defendant recommended a lodestar of $8,857.50 and recommended an adjustment downward based upon the results obtained pursuant to *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### I. Plaintiffs As Prevailing Parties

In order to recover attorneys' fees pursuant to 42 U.S.C. section 1988 plaintiffs must satisfy the threshold requirement of being a "prevailing party." In *Hensley v. Eckerhart, supra,* the Supreme Court stated:

The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (C.A. 1 1978). (footnotes omitted)

The Eighth Circuit Court of Appeals applied this standard in *Fast v. The School District of City of Ladue,* 712 F.2d 379, 380 (8th Cir.1983). The Eighth Circuit Court of Appeals formulated its own standard for making this threshold determination prior to the decision in *Hensley.* In *Reel v. Arkansas Department of Corrections,* 672 F.2d 693 (8th Cir.1982), the court stated that "(a) plaintiff qualifies as a prevailing party once he has been successful on a single substantial claim brought in the context of a civil rights suit; success on all claims made is not required." *Id.* at 697, *citing Busche v. Burkee,* 649 F.2d 509, 521 (7th Cir.), *cert. denied* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The court in *Reel* further stated that "(i)t is sufficient if a significant issue is determined in the plaintiff's favor and leads to the achievement of some of the benefits sought by bringing suit." *Id.* at 697, *citing Oldham*

.v. Ehrlich, 617 F.2d 163, 168, n. 9 (8th Cir.1980); Bonnes v. Long, 599 F.2d 1316 (4th Cir.1979); Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir.1978). A court may also look to the "substance of the litigation's outcome" to determine if the plaintiff substantially prevailed. Reel v. Arkansas Department of Corrections, supra, citing Ross v. Horn, 598 F.2d 1312 (3rd Cir.1979), cert. denied 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). See also Charles v. Coleman, 689 F.2d 774, 776 (8th Cir. 1982).

■ The fact that plaintiffs did not prevail on all the theories alleged in the complaint and did not obtain all desired relief does not preclude an award of attorney's fees if plaintiffs succeeded on a single substantial civil rights claim. United Handicapped Federation v. Andre, 622 F.2d 342, 348 (8th Cir.1980); Oldham v. Ehrlich, supra at 168 f.n. 9; Hensley v. Eckerhart, supra, — U.S. at ——, 103 S.Ct. at 1939, 76 L.Ed.2d at 50; Reel v. Arkansas Department of Corrections, supra at 697; Fast v. The School District of City of Ladue, supra at 380.

■ A lawsuit which does not directly result in the relief sought but prompts or catalyzes the defendant to act may qualify the plaintiffs for an attorney's fee award. United Handicapped Federation v. Andre, supra at 346 f.n. 5; International Society for Krishna Consciousness, Inc. v. Andersen, 569 F.2d 1027 (8th Cir.1978); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir.1970). The First Circuit Court of Appeals in Nadeau v. Helgemoe, supra, established a two-fold test for determining who was the prevailing party in a case which has been settled. This test was adopted by the Eighth Circuit in United Handicapped Federation v. Andre, supra at 346. This analysis applies equally to the question of a plaintiff's entitlement to attorney's fees where the procedures challenged have been changed subsequent to the filing of the plaintiff's lawsuit, but no formal judgment or settlement decree mandates such changes. See e.g. Ross v. Horn, 598 F.2d 1312, 1314 (3rd

Cir.1979), cert. denied 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); Institutionalized Juveniles v. Secretary of Public Welfare, 568 F.Supp. 1020 (E.D.Pa. 1983).

■ The first part of the Nadeau two-part test presents a factual question. This test requires that "... plaintiff's suit and their attorney's efforts ... (be) a necessary and important factor in achieving the improvements ..." Nadeau v. Helgemoe at 281. The factual test essentially requires a causal relationship between the plaintiff's lawsuit and the beneficial changes implemented by the defendant. Gurule v. Wilson, 635 F.2d 782, 791–2 (10th Cir.1980). It is not, however, necessary for the plaintiff's lawsuit to be the sole cause or even the primary cause of the changes. United Handicapped Federation v. Andre, supra at 346. If the plaintiffs' lawsuit here served as a catalyst for changes in the defendant's past practices and such changes provided some of the relief initially sought such changes are properly considered by the Court in analyzing whether the plaintiffs were the prevailing party assuming satisfaction of the second part of the Nadeau test.

The second part of the Nadeau test presents a legal question involving a determination of whether defendant's conduct in making the changes or reforms beneficial to the plaintiffs was legally required or merely gratuitous. Nadeau at 281. If the defendant's actions were made gratuitously or voluntarily, the plaintiffs did not legally prevail and the second part of the Nadeau test goes unsatisfied. The Eighth Circuit Court of Appeals defined this test as "... whether defendant's conduct can be viewed as 'gratuitous,' that is, whether plaintiff's lawsuit was 'frivolous, unreasonable, or groundless,'" United Handicapped Federation v. Andre, supra at 347.

Plaintiffs contended that they were obviously a "prevailing party" although they did not prevail on all of the claims. The plaintiffs base this contention upon their success with respect to obtaining beneficial changes in disciplinary and classification

procedures in relation to the Adjustment Center and CCU and in obtaining specific changes in living conditions and entitlements in the Adjustment Center and CCU. The defendant, however, takes issue with the plaintiffs' contentions. The defendant accurately points out that the plaintiffs enjoyed no success on their equal protection (race discrimination) claims nor on their overall claim that the conditions in the Adjustment Center violated the Eighth Amendment's prohibition against cruel and unusual punishment. The defendant contended that plaintiffs achieved only full or partial limited success in only a few of the areas in which changes were sought. The defendant characterized these changes as minor adjustments or simply a fine tuning of existing circumstances.

■ The Court finds that the plaintiffs are a "prevailing party" and entitled to an award of attorneys' fees pursuant to 42 U.S.C. section 1988. The defendant understates the degree of success that plaintiffs attained in the litigation, particularly as it relates to the due process issues. In resolving the question whether the plaintiffs are the prevailing party, the Court must view the litigation as a whole and not just balance the plaintiffs' wins against their losses. *Reel v. Arkansas Department of Correction, supra* at 697; *Charles v. Coleman, supra* at 776; *Gurule v. Wilson,* 635 F.2d 782, 791 (10th Cir.1980). In viewing the litigation as a whole the plaintiffs here have succeeded on "significant or substantial issues" which success provided at least some of the relief sought by the litigation. *See Hensley v. Eckerhart, supra; Reel v. Arkansas Department of Correction, supra.* Without considering the plaintiffs' limited success on the overall Eighth Amendment claims and the challenges to specific conditions, the plaintiffs did obtain meaningful changes in the procedural due process area.

Substantial changes in policy were prompted or catalyzed by the litigation with respect to the procedures that the Classification Review Board must comply with in making the initial placements from the general prison population to CCU. The causal connection between the litigation and the changes cannot be disputed, satisfying the first part of the *Nadeau* test. Prior to the change in procedures by the defendant the Classification Review Board would make such placements without notice or a hearing. During the course of the trial the defendant changed the procedures to provide the inmates a formal due process hearing prior to placement in the CCU. The Court in issuing its memorandum decision and order and judgment assumed that this change of procedure was implemented by the defendant. The defendant contended that this change was gratuitous and not legally mandated. This Court, however, found that the preexisting rules and regulations of the penitentiary created a justifiable expectation that an inmate could remain in the general prison population as long as he obeys the rules which liberty interest could not be taken away without affording the inmates due process. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Richardson v. Lokey,* 427 U.S. 902, 96 S.Ct. 3186, 49 L.Ed.2d 1196 (1976); *Gurule v. Wilson, supra.* The defendant's action in changing the procedure without court order was not gratuitous, but constitutionally required, therefore an improvement attributable to plaintiffs' litigation. The second part of the *Nadeau* test is also satisfied so these changes are properly considered in this determination. This change by itself was clearly significant.

The plaintiffs also obtained a change in the review process for those confined in the Adjustment Center. This change provided that if confinement was continued after review, the inmate must be notified of the reasons for continued confinement, what was expected of the inmate to obtain release, and the objective criteria that was to be applied at the next review. (This change was not, however, included in the judgment itself). In addition, those inmates confined to CCU will have their cases reviewed by the Classification Review Board at least every ninety (90) days.

If such confinement is to continue, then the inmate must be provided specific written reasons why such confinement will continue, notice before the hearing, opportunity to be present at such hearing and present a statement or documentary evidence, and those unable to prepare their own cases may be represented by their assigned correctional counsellors.

A further change in policy, prompted by the litigation to the benefit of the plaintiff class but not specifically noted in the judgment of the court, was to establish a written policy with respect to the maximum period of confinement in segregation. The first part of the *Nadeau* test is again satisfied without any dispute. Prior to the adoption of Policy Statement 3.26 of Living Guide and Regulation of the South Dakota Penitentiary there was no established policy as to the maximum time that may be spent in segregation per offense. During the course of trial, the defendant proposed and adopted Policy Statement 3.26 which limited the period of confinement in segregation to a maximum of thirty (30) days per offense. Based upon this change the Court denied plaintiffs' motion for a preliminary injunction and mooted any question about this practice during the trial. The defendant cannot reasonably conclude that this change was gratuitous based upon the mandate in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). This change in policy satisfied both parts of the *Nadeau* test and properly considered by the Court in this determination. This change, while it may seem miniscule to the defendant, is not insignificant to those presently or in the future confined to segregation. This change also obtained for the plaintiff class some of the relief sought by the litigation.

Although the Court did not find any constitutional violations with respect to the living conditions in the Adjustment Center, it did recommend changes in certain conditions or policies to the defendant and in some cases mandated such changes. The changes which the defendant submitted to the Court in response to the Court's memorandum decision and order were incorporated in the judgment of the Court. These changes resulted in improvements in the living conditions of those inmates confined to the Adjustment Center, albeit minimal in scope. These improvements involved the following areas:

(1) established regulations and restrictions on the use of dark cells;

(2) clarifies that psychiatric care must be provided when needed;

(3) individual choice as to amount of wattage in light bulbs in each cell up to 100 watts;

(4) clarifies the furnishings that must be provided in each cell and the basis for their removal;

(5) daily trash collection;

(6) increased frequency of recreational opportunities in Second Grade, Third Grade and CCU and nature of such opportunities;

(7) increased frequency of showers;

(8) increased access to law books and established procedures for administering the policy;

(9) strip searches upon return from noncontact visits were discontinued.

The conditions of confinement in the Adjustment Center and CCU following the Court's judgment are now governed by written policies and guidelines whereas before they were largely informal unstated policy matters. This change improved the conditions to some extent of the plaintiff class and obtains some of the relief sought by the litigation. The plaintiffs' litigation clearly catalyzed these improvements as a question of fact, but these changes with a few exceptions were not mandated by either the Constitution or the Court's memorandum decision and order, but were largely gratuitous. Plaintiffs having significantly succeeded in their procedural due process claims therefore makes it unnecessary for the Court to determine whether plaintiffs' success as to individual living conditions would by itself establish the plaintiffs as a prevailing party. Viewing the litigation as a whole and the results

obtained, the plaintiffs have "prevailed" within the context of 42 U.S.C. section 1988.

## II. Determining a Reasonable Fee

 Attorney's fees are routinely awarded to a prevailing plaintiff unless "special circumstances" render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Johnson v. Nordstrom-Larpenteur Agency, Inc.,* 623 F.2d 1279, 1282 (8th Cir.), *cert. denied* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *United Handicapped Federation v. Andre,* 622 F.2d 342 (8th Cir.1980); *Green v. Ten Eyck,* 572 F.2d 1233, 1243 (8th Cir.1978); *Walker v. Wegner,* 535 F.Supp. 415 (D.S.D.1982). The Court does not find that special circumstances exist here which would make an award of attorneys' fees unjust.

Having concluded that the plaintiffs are a prevailing party, pursuant to 42 U.S.C. section 1988, and that no "special circumstances" exist, the next step is to determine the amount of a reasonable fee. "(T)he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart, supra,* — U.S. at —, 103 S.Ct. at 1939, 76 L.Ed.2d at 50. *See also Jorstad v. I.D.S. Realty Trust,* 643 F.2d 1305, 1312 (8th Cir. 1981). This calculation, however, provides only an objective basis upon which to make an initial estimate of the fee award and is not itself conclusive. *Id.*

 Prevailing plaintiffs are not entitled to compensation for those hours claimed that were not "reasonably expended." *Id.* The district courts are vested with the discretion to evaluate the number of hours claimed and to reduce the number of hours to the extent appropriate under the circumstances. *Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d 645, 647 (8th Cir.1981); *Hinkle v. Christensen,* 548 F.Supp. 630, 632 (D.S.D.1982). The district court may reduce the number of hours claimed if they are found to be duplicative or excessive. *Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 457 (8th Cir. 1983). The United States Supreme Court in *Hensley* stated that "counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary ..." *Hensley v. Eckerhart, supra* at — U.S. —, 103 S.Ct. at 1939–40, 76 L.Ed.2d at 51; *See also, Ass'n for Retarded Citizens of N.D. v. Olson,* 713 F.2d 1384, 1395 (8th Cir.1983).

Plaintiffs' counsel (excluding Kemp, the paralegal) requested an attorneys' fee award based upon 586.5 total hours. Defendant in response to plaintiffs' request submitted a chart which divided the hours claimed into various types of activities. Addressing only the hours claimed by the attorneys, the defendant presented eight categories of activities which were identified by the letters A through G. The activities encompassed by Type A through G are all tasks which would normally be billed to a private-fee-paying client in the exercise of billing judgment. *Hensley v. Eckerhart, supra, citing Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc). *See also, Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983).

Concluding that the tasks performed are compensable or properly billable does not complete the Court's inquiry since the time actually expended does not mean that such time was reasonably expended in terms of the amount of time expended on each task. The Tenth Circuit in *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983), stated that the hours reported for each task that are properly billable should also be evaluated by the district court in order to determine whether the time spent was reasonable in light of the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the actions of the other side. *Id.* at 554. The potential duplication of services, especially when multiple attorneys are involved, must also be considered in this determination. *Id.*

Plaintiffs claimed for Type A activity, which involved meetings with clients and witnesses, a total of 88.5 hours,—Gilbert 28.5 hours; Stanley 20 hours; and Cummings 40 hours. The defendant recommended approximately 22.5 hours for these activities (Type A) objecting primarily because the hours claimed were undocumented, excessive, and duplicative. The issues raised by the defendant concerning the specificity and documentation of the fee claims are addressed later as a separate issue.

Considering the nature of this case, a total of 88.5 hours to meet with witnesses and clients is excessive. This case did not turn upon the individual experiences of any one of the inmates, but primarily upon the regulations and policies of the defendant governing the conditions and procedures in the Adjustment Center as it affected the plaintiff class. These regulations and policies could have been obtained more efficiently and effectively by other means. Time spent by counsel listening to inmates' complaints about conditions was not reasonably expended nor was such time necessary to effectively litigate the issues in this case. In addition, it did not require three attorneys to interview the clients or witnesses. This expenditure of time was essentially duplicative. The Court finds that a reasonable number of hours for Type A activity was 60 hours. This reduction shall be apportioned between the three attorneys in the following manner:

| | No. of Hours Claimed Type A | No. of Hours Determined to be Reasonable |
|---|---|---|
| Gilbert | 28.5 | 19.0 |
| Stanley | 20.0 | 10.5 |
| Cummings | 40.0 | 30.5 |
| | 88.5 hours | 60.0 hours |

Type B activity involved meetings and conferences with co-counsel. The plaintiffs' counsel claimed a total of 102.5 hours for meetings among themselves. Gilbert claimed 42 hours, Stanley claimed 34 hours, and Cummings claimed 26.5 hours for Type B activities. The defendant recommended 36.5 hours for Type B activity. The defendant challenged the need for all three lawyers to sit down together and discuss the case, the conflicts in the dates, and the amounts of time claimed. The defendant suggested that the lead attorney should have met with each of the lawyers and delegated responsibilities rather than tying up three lawyers at one time with all aspects of the case. Approximately half of the hours claimed for this activity involved night meetings following the trial days.

The Court acknowledges the necessity for meeting among counsel to discuss case strategy and other aspects of the case, but questions the reasonableness of 102.5 hours for such meetings involving all three lawyers. A better practice would have been for plaintiffs to designate lead counsel for particular aspects of the case and for that lawyer to delegate responsibilities to each of the others to minimize duplication of effort and obviate the need for all three lawyers to meet with each other at the same time. Although the total number of hours claimed considering that three lawyers were involved representing the same plaintiffs are not excessive, it is duplicative and redundant. The Court finds that 75.5 hours represents a reasonable number of hours after reducing the hours claimed that are considered duplicative and redundant. This reduction shall be apportioned between the three attorneys as follows:

| | No. of Hours Claimed Type B | No. of Hours Determined to be Reasonable |
|---|---|---|
| Gilbert | 42.0 | 33.0 |
| Stanley | 34.0 | 25.0 |
| Cummings | 26.5 | 17.5 |
| | 102.5 hours | 75.5 hours |

Type C activity involved drafting of pleadings and letters, research, reading transcripts, and general trial preparation. Gilbert claimed 18.5 hours, Stanley 114 hours, and Cummings 23.5 hours for Type C activity for a total of 156 hours. The defendant recommended a total of 62 hours objecting on the grounds that hours claimed were excessive, duplicative, and undocumented. The Court does not find that number of hours claimed by the plaintiffs for Type C activity to be unreasonable.

Type D activity included hearings and actual in-court time for trial of the litiga-

tion. Plaintiffs' counsel respectively claimed the following number of hours for Type D activity—Gilbert 48 hours; Stanley 52 hours; and Cummings 50 hours for a total of 150 hours. The defendant recommended reducing the number of hours claimed for Type D activity to 94 hours contending that some of the hearings local counsel could have handled and that representation by three lawyers at trial was one too many. Defendant recommended deletion of the hours claimed for the prison tour due to a discrepancy in the dates in the fee application.

The trial in this action started on June 3, 1980, and continued through June 6, 1980. The trial recessed until December 8, 1980, and then continued through December 11, 1980, for a total of eight days of trial. Assuming six hours for each day of trial a total of forty-eight (48) hours was expended for each attorney for an aggregate of 144 hours. The other hours claimed under Type D relate to motion hearings, depositions, and the prison tour. Attendance of three attorneys at the pretrial hearing held on May 22, 1979, was unnecessary and resulted in duplication of work effort, particularly since the motion for a preliminary injunction was not being pursued at that time. This task could and should have reasonably been handled by one lawyer so the hours claimed for this hearing will be reduced by twenty (20) hours. The Court rejects the defendant's recommendation that the hours claimed for the prison tour be deleted. The Court does, however, agree with the defendant's contention that three lawyers to handle a court trial of this nature (126 hours) was excessive and resulted in unnecessary duplication of effort so the number of hours claimed for in-court time will be reduced by forty-two (42.0) hours. The addition of a second chair for trial invites careful scrutiny by the Court for possible duplication of effort. *Hinkle v. Christensen*, 548 F.Supp. 630, 633 (D.S. D.1982); *Walker v. Wegner*, 535 F.Supp. 415, 418 (D.S.D.1982) (*quoting Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974). The plaintiffs have not sustained their burden of proof that three lawyers were necessary to try this case. *See Hinkle v. Christensen, supra* at 633. The Court finds that for Type D activity that 106 hours was a reasonable number of hours and apportions these hours between plaintiffs' counsel as follows:

| | No. of Hours Claimed Type D | No. of Hours Determined to be Reasonable |
|---|---|---|
| Gilbert | 48.0 | 33.34 |
| Stanley | 52.0 | 37.34 |
| Cummings | 50.0 | 35.34 |
| | 150.0 hours | 106.02 hours |

Type E activity involved Gilbert's contacting of Jay Kaplan with the National Center for Correctional Mediation in New York City. The defendant refused to participate in the proposed mediation process. Attorney Gilbert claimed four and one-half (4.5) hours for his visit with Jay Kaplan and one hour for a telephone conversation. The defendant contended that these hours should not be compensated since they were not incurred with his approval, encouragement or knowledge. The Court rejects the defendant's argument but regards the plaintiffs' attempt to obtain mediation of the dispute as ancillary to the civil rights litigation upon which an award of attorneys' fees can be based. This ancillary activity lies outside the context of the civil rights action filed with the district court and as such is not compensable under 42 U.S.C. section 1988. The awarding of attorneys' fees for other related proceedings rests in the sound discretion of the trial court. *Brown v. Bathke*, 588 F.2d 634, 638 (8th Cir.1978). This activity cannot reasonably be considered settlement discussions since the defendant was not a party to the activity. The Court finds that none of the claimed hours for Type E activity are compensable so reduces the hours claimed by Gilbert by five and one-half (5.5) hours.

Type F activity involved time spent by counsel in traveling from Cleveland, Ohio, to Sioux Falls, South Dakota, for meetings, hearings, and trial. Plaintiffs' counsel—Gilbert and Stanley—claimed a total of eighty (80.0) hours for travel (Type F). Gilbert claimed 32 hours—(four trips at 8 hours each) and Stanley claimed 48 hours

(6 trips at 8 hours each). The defendant, however, contended that the bulk of this travel was unnecessary because local counsel, Cummings, could have handled the matters. Those trips the defendant conceded were necessary he contended should be compensated as costs at $350.00 per trip in lieu of compensation. The Court is unwilling to conclude that all the trips to Sioux Falls were unnecessary nor is it willing to compensate this time on the basis of costs alone as recommended by the defendant. The Court does, however, find that in the exercise of billing judgment counsel would not bill a private client for 80.0 hours of travel time, particularly at the same rate as for other legal tasks. The Court further finds that a reasonable number of hours would be 60 hours for Type F activity. This reduction shall be apportioned equally between Gilbert and Stanley.

■ Type G activity involved the time expended by plaintiffs' counsel preparing their fee request. Stanley is the only attorney submitting time for Type G activity. Stanley claims 4.0 hours for this activity. Defendant recommended that none of these hours should be compensated. Counsel for prevailing plaintiffs are entitled to compensation for time reasonably spent in preparing and establishing attorney fees pursuant to 42 U.S.C. section 1988. *Jorstad v. I.D.S. Realty Trust, supra* at 1314; *Jones v. MacMillan Bloedel Containers, Inc.,* 685 F.2d 236, 239 (8th Cir.1982); *See also, Gagne v. Maher,* 594 F.2d 336, 344 (2nd Cir.1979), *aff'd on other grounds,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2nd Cir.1983). The Court finds that the four (4.0) hours claimed by Stanley were reasonably expended.

In summary the Court finds that 461.52 hours represents a reasonable number of hours for the litigation of this case which hours are apportioned among the three attorneys in the following manner:

| | No. of Hours |
|---|---|
| Gilbert | 125.84 |
| Stanley | 228.84 |
| Cummings | 106.84 |
| | 461.52 hours |

■ The other half of the lodestar equation for computing the amount of a reasonable attorney fee is a reasonable hourly rate. *Hensley v. Eckerhart, supra.* As with the number of hours claimed the district court is vested with the discretion to evaluate the hourly rate charged and reduce the rate if appropriate. *Ladies Center Nebraska, Inc. v. Thone, supra* at 647. The Eighth Circuit has held that "it is particularly important that these rates which are applied be, in fact, reasonable hourly rates." *Jorstad v. I.D.S. Realty Trust,* 643 F.2d 1305, 1312 (8th Cir.1981); *See also, Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140 (8th Cir.1982); *Jaquette v. Black Hawk County, Iowa, supra* at 459.

■ A reasonable rate for compensating attorneys in civil rights cases should be commensurate with the reasonable charges of a private attorney in private litigation. *Jaquette v. Black Hawk County, Iowa, supra* at 459. In addition, it has been held that "(i)n general, a reasonable hourly rate would be the ordinary fee 'for similar work in the community,'" *Avalon Cinema Corp. v. Thompson, supra* at 140 (*quoting Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir.1974)). This definition was further refined in *Jorstad v. I.D.S. Realty Trust, supra* at 1313 in which the court stated that "(t)he term 'reasonable hourly rate' ... (was the) 'hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.'" *Id.* (*quoting City of Detroit v. Grinnell,* 495 F.2d 448, 471 (2nd Cir.1974) (Grinnell I)).

■ The courts are not bound to mechanically accept as conclusive counsel's regular charges as the reasonable hourly rate. *Avalon Cinema Corp. v. Thompson, supra* at 140. The Eighth Circuit has stated that courts have a duty to fix a fee that is reasonable which does not mean automatic acceptance of a lawyer's customary charge. *Id.* To do otherwise "... would

be an abdication of ... (court's) duty to supervise the conduct of the bar and do justice to the losing as well as the winning side." *Id. See also, Jaquette v. Black Hawk County, Iowa, supra* at 458. A lawyer's customary rate may, however, be relevant to the determination of a reasonable hourly rate but would not be conclusive. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983).

Plaintiffs' counsel contended that the following rates represent reasonable hourly rates:

| Gilbert | $125.00 per hour |
| Stanley | $125.00 per hour |
| Cummings | $ 40.00 in-court per hour |
| | $ 30.00 out-of-court per hour |

Gilbert in his affidavit claimed that a rate of $125.00 per hour was justified by his experience as a trial lawyer in complex litigation. Stanley in his affidavit claimed that his experience, particularly in prison litigation justified a rate of $125.00 per hour. The rates claimed by Gilbert and Stanley are not differentiated between in-court and out-of-court time. Cummings claimed a rate of $40.00 for in-court time and $30.00 for out-of-court time citing that this case was his first federal court case and civil rights case. Gilbert and Stanley made no attempt to establish that a rate of $125.00 would be the ordinary rate charged by lawyers of like skill in Sioux Falls, South Dakota, for similar work. Gilbert and Stanley instead relied on what might be their customary charge or the ordinary rate for such services in Cleveland, Ohio. Counsel's customary charges are not binding upon this court. *Avalon Cinema Corp. v. Thompson, supra.* The definition of "reasonable hourly rate" established by the Eighth Circuit Court of Appeals requires that the rate be based upon the ordinary rate for the area in which the case is tried, not the origin of plaintiffs' counsel. *Id.; Jorstad v. I.D.S. Realty Trust, supra* at 1313. In *Jorstad v. I.D.S. Realty Trust, supra,* the plaintiff requested compensation based upon $125.00 per hour for senior attorneys and $60.00 for associates and the district court awarded attorneys' fees based upon these rates relying upon national standards. The Eighth Circuit, however, held that the application of national standards constituted an abuse of discretion and set the hourly rates at $80.00 for senior attorneys and $40.00 for associates. *Id.* Out-of-town counsel are not, however, limited to the prevailing rate in the district if they can show that they have been unable through diligent, good faith efforts to retain local counsel. *Avalon Cinema Corp. v. Thompson, supra (citing Donaldson v. O'Connor,* 454 F.Supp. 311, 315 (N.D.Fla. 1978). The plaintiffs here have failed to show any efforts to obtain local counsel so will be held to the customary fee for the area in which the trial was held. This was not the kind of case that members of the South Dakota and Sioux Falls bar would have been unable or unwilling to undertake.

In lieu of granting interest or increasing the amount for inflation the prevailing rate for 1983 will be applied to all the hours claimed instead of a historical rate. The Tenth Circuit in *Ramos v. Lamm, supra* at 555, stated that "(t)he hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." This approach roughly approximates periodic adjustments for inflation and interest. *Id.*

The Court finds that a reasonable hourly rate for the services performed by Gilbert and Stanley in this litigation, based upon the prevailing rate in Sioux Falls, South Dakota, for lawyers of like skill and competence performing similar services, is $75.00 per hour for in-court time and $60.00 per hour for out-of-court time. The Court accepts Cummings' claimed rate of $40.00 for in-court and $30.00 for out-of-court time.

Multiplying these reasonable hourly rates by the reasonable number of hours previously determined yields the following lodestar for each of the attorneys:

| | In-Court Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Gilbert | 33.34 | $75.00 | $2,500.50 |
| Stanley | 37.34 | 75.00 | 2,800.50 |
| Cummings | 35.34 | 40.00 | 1,413.60 |
| | 106.02 hours | | $6,714.60 |

| | Out-of-Court Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Gilbert | 92.5 | $60.00 | $ 5,550.00 |
| Stanley | 191.5 | 60.00 | 11,490.00 |
| Cummings | 71.5 | 30.00 | 2,145.00 |
| | 355.5 hours | | $19,185.00 |
| | | TOTAL | $25,899.60 |

The above analysis also applies to computing the lodestar or base fee for the efforts of Kemp, the paralegal employed by Cummings to assist in this litigation. The application for fees submitted by Cummings includes 409.5 hours of effort expended by Kemp. These hours are divided between compilation of statistics (185 hours) and all other hours (224.5 hours). A rate of $15.00 per hour was multiplied times the 409.5 hours to arrive at a proposed lodestar of $6,142.50. The defendant recommended a total of 9.5 hours times a rate of $5.00 per hour for a lodestar of $47.50. The defendant argued that Kemp's claimed hours were excessive, undocumented, unnecessary, pro bono, and educational.

The Court agrees with the defendant that the number of hours expended by Kemp were excessive given the scope, nature, and complexity of this case, particularly as it relates to sessions with plaintiffs and other unspecified witnesses and Kemp's limited role in the litigation. In addition, it appears that Kemp also spent an unnecessary amount of time on legal research not relevant to the case. The Court is not at this point addressing itself to the lack of documentation present in Kemp's application, but will address this problem later. The Court finds 230 hours to be a reasonable number of hours for the tasks performed by Kemp. The proposed rate of $15.00 per hour is also too high for similar services in the area. The Court finds that a reasonable hourly rate is $10.00 per hour. The lodestar for Kemp's services is $2,300.00 (230 hours × $10.00 per hour).

The establishment of a lodestar or base fee does not end the Court's inquiry in determining a reasonable fee. The lodestar of $28,199.60 provided only an initial estimate or starting point in establishing a fee award. *Hensley v. Eckerhart, supra,* — U.S. at —, 103 S.Ct. at 1939, 76 L.Ed.2d at 50; *Jorstad v. I.D.S. Realty Trust, supra* at 1312. A lodestar may be adjusted upward by the court based on the contingent nature of success or the quality of the attorney's work. *Jorstad v. I.D.S. Realty Trust, supra* at 1312–13, (*citing Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167–68 (3rd Cir.1973); *Merola v. Atlantic Richfield Co.,* 493 F.2d 292, 297 (3rd Cir.1974); *See also, Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir.), *cert. denied* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). In addition, the twelve *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), factors also provide guidelines to be used by a court to enhance the lodestar.

Plaintiffs suggested in their fee applications (Gilbert and Stanley) that a multiplier or bonus factor should be applied to the lodestar for the quality, risk, complexity, and because work on this case precluded work for other clients. The defendant, on the other hand, argued that enhancement was not justified in this case. A moving party bears a heavy burden in establishing entitlement to an increase in the lodestar for risk and quality. *Jorstad v. I.D.S. Realty Trust, supra* at 1314. Increasing of the lodestar to adjust for the quality of counsel's work is designed to reward an unusual or extraordinary degree of skill. The Court finds that under the circumstances in this case that enhancement of the lodestar is not justified. Although counsel for the plaintiffs purported to have exhibited extraordinary skill in handling this case, the level of skill shown has been compensated in the "reasonable hourly rate" established by the Court. This case was not so complex and unusual that it required special skills to litigate the questions involved. The risk or contingency involved in this case was also not out of the ordinary so as to justify an enhancement of the lodestar.

If a plaintiff in a civil rights case does not prevail on all claims unrelated to

those upon which he succeeds, they are not entitled to compensation for time expended on these unrelated unsuccessful claims. *Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. The results or success obtained was cited by the Supreme Court in *Hensley* as an important factor to be considered by the district court in determining a reasonable fee. *Id.*

The Eighth Circuit had stated prior to the decision in *Hensley* that plaintiff's success was a factor that could be considered in determining reasonable attorneys' fees. *Johnson v. Nordstrom-Larpenteur Agency, Inc.,* 623 F.2d 1279 (8th Cir.), *cert. denied* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *In re Southwestern Bell Tel. Co. Maternity Benefits Litigation v. Southwestern Bell Telephone Co.,* 602 F.2d 845, 850 f.n. 9 (8th Cir.1979); *Brown v. Bathke,* 588 F.2d 634, 637 (8th Cir.1978). *Hensley* emphasized that the relationship between the extent of success and the amount of fee award may justify an adjustment of the lodestar. *Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. 1940, 76 L.Ed.2d at 51. *Hensley* also established that a plaintiff may be compensated for time expended on unsuccessful claims that are related to the successful claims. *Id.* The emphasis that may be placed on the degree of success under *Hensley* exceeded that previously authorized in the Eighth Circuit. *See Brown v. Bathke, supra.*

Plaintiffs asserted that their complaint presented interrelated legal theories which precluded an adjustment based upon the success obtained pursuant to *Hensley.* The plaintiffs essentially urged that all the claims made were "related" hence under *Hensley* they may be compensated for all their time although unsuccessful on some of their claims. The defendant, however, argued that the principles enunciated in *Hensley* demanded a large reduction in the lodestar.

*Hensley* requires an initial determination as to whether the plaintiffs failed to prevail on claims unrelated to the successful claims. The plaintiffs presented three major theories of relief to the Court in this litigation. These theories were (1) conditions of confinement in the Adjustment Center violated the Eighth and Fourteenth Amendments; (2) procedures governing placement and continued detention in the Adjustment Center and the CCU violated Fifth and Fourteenth Amendments due process; and (3) racial discrimination in the placement and continued confinement in the Adjustment Center. The plaintiffs asserted that these three claims are related claims and not severable from each other.

The three theories of relief set forth by the plaintiffs were not based upon a common core of facts, nor were they related legal theories in the sense of warranty and tort claims in products liability cases. *Id.* The theories presented were not alternate theories to but one end but instead would each achieve a different type of relief. The litigation can theoretically be viewed as a series of discrete claims. *Id.* The plaintiffs, however, by the nature of their fee application effectively precluded analysis of the time expended on each of these discrete claims.

The plaintiffs did not prevail to any extent on their racial discrimination claim and obtained only limited success on their other claims. No Eighth Amendment violations were found in the overall conditions in the Adjustment Center and only minor problems were found with respect to individual living conditions in the Adjustment Center. The problems identified for the most part were not problems of constitutional proportion. The plaintiffs also did not completely succeed on all their due process allegations, but were only moderately successful.

The plaintiffs' fee application did not differentiate, with some exceptions, between legal theories in terms of documenting the time expended. This forces the Court to view the plaintiffs' application as a single interrelated claim and not as discrete claims. The Supreme Court in *Hensley* directed that in those instances where counsel's time is devoted to the litigation as a whole making it difficult to divide the

hours expended on a claim-by-claim basis the court "should focus on the significance of the overall relief obtained ... in relation to the hours reasonably expended on the litigation." *Id.* The Supreme Court further stated that "(w)here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* This would normally encompass all hours reasonably expended. *Id.* The Court does not find the results achieved in this litigation to be so excellent to justify ignoring the degree of success as a factor in determining a reasonable fee.

"If the plaintiff has achieved 'only partial or limited success' then even though the plaintiff's claims were 'interrelated, nonfrivolous, and raised in good faith,' an award determined by multiplying the hours reasonably expended on the whole litigation by a reasonable hourly rate may be excessive: 'Again, the most critical factor is the degree of success obtained.'" *Ramos v. Lamm, supra,* 713 F.2d at 556, (*quoting Hensley v. Eckerhart, supra,* — U.S. at ——, 103 S.Ct. at 1941, 76 L.Ed.2d at 52). The application of these principles the Supreme Court stated was "particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions." *Hensley v. Eckerhart, supra,* — U.S. at ——, 103 S.Ct. at 1941, 76 L.Ed.2d at 52.

The Court finds that upon viewing the results obtained by the plaintiffs in this litigation, and the number of hours expended that the lodestar, previously determined, is excessive given the degree of success obtained. The Supreme Court in *Hensley* stated that district courts are vested with discretion in making an equitable judgment concerning this question. *Id.* The trial court may in its discretion "attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success." *Id.* The nature of the plaintiffs' application effectively deprived the Court of the first option of eliminating specific hours so the second method will be applied.

At the outset of this case the plaintiffs sought extensive changes in the conditions and operation of the Adjustment Center, but the results obtained, although significant, were limited in nature and fell far short of the original goal. The Court finds that the principles stated in *Hensley* are particularly appropriate here and thereby reduces the lodestar of $28,199.60 by a multiplier of .40 which reduces the lodestar to $16,919.76. *See generally Institutionalized Juveniles v. Secretary of Public Welfare,* 568 F.Supp. 1020 (E.D.Pa.1983) (applied *Hensley* and reduced the lodestar by a factor of .50 for lack of success).

III. Adjustment to the Lodestar for Lack of Documentation and Specificity

An applicant for attorney's fees bears the burden of establishing both his entitlement to an award and documenting the hours expended and the hourly rates. *Hensley v. Eckerhart, supra,* — U.S. at ——, 103 S.Ct. at 1941, 76 L.Ed.2d at 53. *Hensley* stated that fee applicants should maintain billing time records in a manner that will allow the reviewing court to identify time spent on distinct claims at least to the extent of identifying the general subject matter of the time expenditures. *Id.* — U.S. at ——, 103 S.Ct. at 1941, f.n. 12, 76 L.Ed.2d at 53, f.n. 12. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* — U.S. at ——, 103 S.Ct. at 1939, 76 L.Ed.2d at 50.

Plaintiffs in their fee applications submitted affidavits reflecting the amount of time expended and provided very generalized and vague statements in most instances as to specific nature of the work performed, i.e., time expended on the various claims. The applications appeared to be a reconstruction of the time expended rather than based on contemporaneous time records and as such were merely estimates of the time expended. The plaintiffs' counsel in particular did not document the specific nature of the many hours of meetings with witnesses, plaintiffs, and meetings among themselves. The documentation

supplied by Kemp to justify his expenditure of time was especially deficient. In some instances the date such time was expended was not provided. In addition, no specific evidence was provided as to the reasonableness of the rate sought under the appropriate standard. The information supplied by the plaintiffs made it very difficult if not impossible for the Court to adequately review the reasonableness of the hours and apply the principles of *Hensley v. Eckerhart.*

The Eighth Circuit has stated that lawyers claiming statutory fee awards must insure that all the necessary information is presented to the court, i.e., detailed affidavits explaining and itemizing their fee claims. *See Grunin v. International House of Pancakes,* 513 F.2d 114, 127 (8th Cir.), *cert. denied* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Jorstad v. I.D.S. Realty Trust, supra* at 1313. Other circuits, however, have been much more explicit in defining the type of documentation preferred or required. In *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136 (2nd Cir.1983), the court stated, in light of the problems they had experienced with undocumented and underdocumented fee requests, that

> (h)ereafter, any attorney—whether a private practitioner or an employee of a nonprofit law office who applies for court-ordered compensation in the circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify for each attorney, the date, the hours expended, and the nature of the work done.

*Id.* at 1148; *See also McCann v. Coughlin,* 698 F.2d 112 (2nd Cir.1983) (expressed a preference for contemporaneous time records). The absence of these kinds of records deprives the court of a basis for evaluating the reasonableness of the requested fees in terms of efficiency, staffing, and duplication of effort. In addition, as in this case, where an adjustment in the fee petition is warranted to reflect the plaintiffs' degree of success under *Hens-*

*ley,* the court is also deprived of an effective means of making this apportionment. *McCann v. Coughlin, supra* at 131. In *Nadeau v. Helgemoe, supra* at 279, the court held that "(a)s for the future, we will not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims."

The Court of Appeals for the District of Columbia recently set out in great detail the obligations of an applicant for attorneys' fees with respect to documentation and the procedures to be followed by the district courts in evaluating the applications. *National Ass'n of Concerned Vets v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982). Attorneys seeking statutory awards of attorney fees would be well-advised to consult this opinion as a guide.

The plaintiffs' application for attorneys' fees in terms of documentation presented the Court with numerous problems. The plaintiffs failed to provide adequate documentation of the specific nature of the work performed in many of its out-of-court hours. The Court in evaluating the reasonableness of the hours claimed did not address itself to the problem of documentation and specificity and made no reductions in the number of hours on that basis. Although the Court hesitates to reduce the lodestar further due to the lack of documentation, such a reduction is demanded by the glaring deficiencies in the plaintiffs' fee application. The Court hereby reduces the lodestar of $16,919.76 by a factor of .10 reducing the lodestar to $15,227.78.

### IV. Summary

■ The Court found that plaintiffs were a prevailing party pursuant to 42 U.S.C. section 1988 and as such were entitled to an award of reasonable attorneys' fees. The Court found that a reasonable number of hours for this litigation was 691.52 hours reflecting a reduction of 304.-

48 hours from the plaintiffs' claim of 996 hours. These reductions were primarily based upon duplication of effort and excessiveness of the number of hours claimed. The Court found that a reasonable rate for the services of plaintiffs' counsel to be in the case of Gilbert and Stanley $75.00 per hour for in-court time and $60.00 per hour for out-of-court time. The Court accepted Cummings' claimed rate of $40.00 and $30.00 per hour for in-court and out-of-court time respectively. The Court applied a rate of $10.00 per hour to Kemp's claim. The following reflects the lodestar computation for plaintiffs' counsel:

| | Total Lodestar |
|----------|---------------:|
| Gilbert | $ 8,050.50 |
| Stanley | 14,290.50 |
| Cummings | 3,558.60 |
| Kemp | 2,300.00 |
| | $28,199.60 |

The Court rejected plaintiffs' claim for enhancement of the lodestar finding that enhancement was not appropriate under the circumstances. The Court found upon applying the mandate in *Hensley v. Eckerhart* that the relationship between the results of litigation and the lodestar of $28,-199.60 that the lodestar should be reduced by a factor of .40 to $16,919.76. The lodestar was further reduced by a factor of .10 for lack of documentation and specificity to an adjusted lodestar of $15,227.78. Cummings also applied for an award of $1,008.90 for costs, which request was not objected to by the defendant.

The Court based upon the preceding analysis hereby orders that judgment should be entered for the plaintiffs in the amount of $15,227.78 for attorneys' fees pursuant to 42 U.S.C. section 1988 and costs of $1,008.90.[2] The award of $15,-227.78 shall be apportioned between plaintiffs' counsel in the following manner: (adjustments to the lodestar were apportioned between plaintiffs' counsel in relation to each counsel's proportion of the lodestar before adjustment)

**2.** Costs shall be made a part of the award made

| | Amount Awarded |
|----------|---------------:|
| Gilbert | $ 4,347.27 |
| Stanley | 7,716.87 |
| Cummings | 1,921.64 |
| Kemp | 1,242.00 |
| | $15,227.78 |